## SMITH et al. v. BELFORD et al.

(Circuit Court of Appeals, Sixth Circuit.   February 12, 1901.)

No. 939.

1. BANKRUPTCY—PROPERTY IN HANDS OF ASSIGNEE—JURISDICTION.

In bankruptcy proceedings without the person to whom the bankrupt had previously made an assignment being made a party, and without process or notice to him, an order was made that he deliver the property to a trustee who might be chosen.   Thereafter, on petition of the trustee alleging the previous order and the refusal of the assignee to deliver, and praying that he be dealt with for contempt, an order was made that the assignee show cause why he should not be punished for contempt, and on such petition, and his answer alleging that the first order was without notice to him, and that the court was without jurisdiction, he was ordered to turn over the property at once or be committed for contempt.   *Held*, that the orders were without jurisdiction, the first being without notice, and the last not being an original order based on a fresh petition and a hearing thereon, but in further execution of the original order.

2. SAME—COMMITMENT FOR CONTEMPT.

The court alone being authorized by Bankr. Act 1898, § 1, cl. 16, and Id. § 41, to exercise the power of commitment for contempt, it is error to leave the question of commitments to the discretion of the referee.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of Ohio, in Bankruptcy.

Charles E. Longwell, for petitioners.

H. B. Thompson, for respondents.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge.   On March 2, 1900, one Harpel made and filed in the probate court for Lucas county an assignment of all his property to the petitioner Smith, for the benefit of his creditors, under the provisions of the statutes of Ohio.   On the day following he qualified by filing the requisite bond, and he was authorized by an order of the probate court to carry his trust into execution.   Thereupon he took possession of the property.   On July 9, 1900, a petition was filed in the court below by creditors of Harpel, praying that he be adjudicated a bankrupt, upon the grounds that he had admitted his insolvency, and his willingness to be adjudicated a bankrupt for that reason.   While this petition was pending, and on July 25, 1900, one of the petitioning creditors filed in the district court the following motion:

"In the Matter of the Assignment of Oliver P. Harpel, Bankrupt—Motion.

"Now comes H. W. Allen, one of the petitioning creditors herein, and respectfully represents to this court that heretofore, to wit, on the 2d day of March, 1900, the said Oliver P. Harpel made an assignment to Augustus J. Smith for the benefit of all of his creditors, which said deed of assignment was duly filed in the probate court of Lucas county, Ohio, and that the said Augustus J. Smith, as such assignee, threatens, and will, unless restrained by this court, to sell and dispose of all of the assets of the said Oliver P. Harpel. Wherefore the said H. W. Allen prays this honorable court that the said Augustus J. Smith, assignee as aforesaid, be made a party hereto, and that subpœna issue for that purpose, and for an order staying all further proceedings in the matter of said assignment in the probate court of Lucas county,

Ohio, and restraining the said Augustus J. Smith from selling and disposing of any of said property, and ordering and directing him to hold said property, and to turn the same over to a trustee in bankruptcy herein, to be hereafter elected.
Chittenden & Chittenden,
"C. W. F. Kirkley,
"Attorneys for H. W. Allen."

On the 27th of the same month, without notice to Smith, the assignee, of the filing of the motion or of the hearing thereon, the district court made the following order:

"This day, this cause coming on to be heard upon the application of the petitioning creditors for an order staying further proceedings in the matter of the assignment of the said Oliver P. Harpel in the probate court of Lucas county, Ohio, and for an order restraining Augustus J. Smith, assignee therein, from selling and disposing of the property of said bankrupt; and the court, being fully advised in the premises, orders that the said Augustus J. Smith, assignee of the said Oliver P. Harpel, be, and he hereby is, restrained and enjoined from selling or disposing of any of the property of the said Oliver P. Harpel; and the said Augustus J. Smith, assignee as aforesaid, is hereby directed and ordered to hold all moneys and properties in his hands as such assignee subject to the further order of this court, until the petition in bankruptcy shall have been dismissed, or a trustee elected by the creditors to take charge of the assets of said bankrupt, and that upon the election and qualification of such trustee the said Augustus J. Smith, assignee as aforesaid, is ordered and directed to turn over to the said trustee all moneys and properties in his hands as such assignee of Oliver P. Harpel."

This order was served on Smith, and on August 9th he appeared and filed a motion that the order be vacated, upon the grounds—First, that facts sufficient were not stated in the petition; and, second, that the court had no jurisdiction of the subject-matter therein set forth; and he also demurred to the petition upon the same grounds. The referee to whom the matter was referred, in the absence of the judge, refused to hear the demurrer, for the reason that an amended petition in bankruptcy against Harpel, to which Smith was now ordered to be made a party defendant, had been filed and remained undisposed of. The motion to dismiss this order has never been disposed of, otherwise than that it was in effect denied by the order of January 2, 1901, presently to be referred to. Smith answered this amended petition, setting up his title, reciting the order of July 27th, and praying that it might be "revoked and dismissed," and that the proceedings in bankruptcy be declared null and void as against him. The creditors demurred to the answer, and the court sustained the demurrer. One or more other persons were heard in opposition to the adjudication, but it is unnecessary to notice the nature of the objections. On September 21, 1900, Harpel was adjudicated a bankrupt, and Bernard F. Brough was elected trustee. On November 21, 1900, Brough, as trustee, filed a petition stating his appointment; the assignment by Harpel to Smith; the order of July 27th that the latter turn over the property to the trustee when he should be chosen; the refusal of Smith to comply with it; and praying that Smith be dealt with for contempt. On November 23d, the court, on this petition of Brough, trustee, made an order that Smith show cause, on December 4th, why he should not be punished for contempt. In response to this order, Smith answered, stating the assignment to him; his qualification; that the assignment was more than four months before the filing of the petition in bank-

ruptcy; that the order of July 27th "was made without any notice or knowledge whatsoever being given to him"; and that the only notice he ever had of it was on the day after it was made. He insisted, therefore, that the court had no jurisdiction over the property or of the person of the respondent; and, further, that if the order were proceeded with he would be deprived of his title and rights without due process of law; and he prayed that the order be vacated and the petition dismissed. Upon the petition and answer, the court, on January 2, 1901, ordered Smith to turn over the property to the trustee immediately, and "authorized and ordered" the referee "to carry this judgment into effect by commitment of the said Augustus J. Smith for contempt, or otherwise, as he shall deem necessary." On January 7, 1901, Smith filed in this court his petition for review of the orders made by the district court requiring him to turn over the assigned property to the trustee, and to the order delegating to the referee the power in his discretion to commit the respondent for his alleged contempt. It is right to say that these proceedings were probably initiated and conducted before the decision of the supreme court in Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, had become known to the court, and were had in view of the rulings which had generally been made in the subordinate courts in respect of the powers of the bankruptcy courts under the act of 1898, in dealing with persons and property affected by the operation of the law. It must be admitted that the proceedings we are required to review went to the verge, if not beyond the limits, of the authority which it had theretofore been held might be exercised by the bankruptcy courts. It is not necessary, however, for us to criticise them in order to determine how far they might be sustained under the law as it had generally been supposed to be.

It does not admit of argument that upon the construction of the bankruptcy act, as settled by the case above cited, the orders made in these summary proceedings that the assignee for the benefit of creditors should deliver up the property, which he held in virtue of the assignment, to the trustee in bankruptcy, were without lawful authority. We have recently held in the case of Nugent v. Mueller (decided in December last) 105 Fed. 581, that it was not competent for the trustee to resort to summary proceedings to recover assets of the bankrupt which had never been in the possession of the trustee, but had, before the proceedings in bankruptcy had been instituted, passed into the hands of other persons, from whom they could not be recovered otherwise than by suit. The reasons for that conclusion are stated in the opinion in that case, and need not be repeated. Since that decision was made our attention has been drawn to a decision by Judge Lowell, in the district of Massachusetts (In re Ward [D. C.] 104 Fed. 985), in which he held that before the adjudication the bankruptcy court had no authority to entertain a petition for an injunction to restrain the disposition by an outside party of "funds and credits" which he had in his possession, but were claimed to belong to the bankrupt. That was the situation in the present case when the original order was made. But the conclusion reached by Judge Lowell was in part based upon the ground that the court would have no authority to

take such a proceeding at a later stage of the case, the ordinary grounds of federal jurisdiction not existing.

The order made July 27, 1900, without process or notice of any kind to the assignee, whatever may be said of the summary character of the proceeding, was without jurisdiction. He was not a party, and was, at least, entitled to an opportunity to be heard before such an order could be made. This is elementary. It is said that he had an opportunity to be heard later, and was heard. But the order which had been made was never released, and the later order of January 2, 1901, was not an original order based upon a fresh petition and a hearing thereon, but was made in further execution of the order of July 27th. The only opportunity given him to be heard was upon an order to show cause why he should not be committed for contempt in not obeying the first. It appears that the petition for the adjudication of bankruptcy was amended, and Smith ordered by the referee to be made a party thereto, but the legitimate object of the petition involved only the inquiry whether Harpel was insolvent, and so was subject to an adjudication or not; that was the only ground alleged in the petition, and that he had admitted. In neither the first nor the amended petition was the assignment assailed or made a ground for adjudication, or even mentioned. Whether or not, upon suitable allegations, the court could have restrained the disposition of the assets, it was not competent, at that stage of the proceedings, to determine finally the question of the assignee's right to the property, and adjudge that he deliver it to a trustee who might thereafter be appointed. There is no ground for the suggestion made in behalf of the trustee that Smith consented to the proceedings which were taken against him, or waived his objections thereto. On the contrary, he continually asserted their invalidity for want of jurisdiction, both in respect to the proceedings themselves and his want of notice of the hearing on which his rights were determined. It is true that, in his answer to the order to show cause why he should not be committed for contempt, he alleged the facts on which his rights depended, but this was for the purpose of showing that the court had no lawful authority to order him to deliver the property to the trustee, for the reason that in such a state of facts it had no jurisdiction to entertain the proceedings.

It was erroneous also to leave the question of the commitment of the assignee to the discretion of the referee, if, as would seem, more was intended than to give authority to the referee to recommend such commitment, if, in the course of the proceedings before him, such a course should appear to him to be necessary; for the court alone is authorized by the act to exercise the power of commitment. Act 1898, § 41; Id. § 1, cl. 16; Loveland, Bankr. 91.

Having reached these conclusions, it would be premature for us to express any opinion upon the contention made by counsel for the trustee that the bankruptcy court has power to take over the administration of the trust created by the assignment to Smith under the laws of Ohio, in respect to so much thereof as remains unexecuted, notwithstanding the assignment was made more than four months prior to the filing of the petition in bankruptcy. The orders of the referee

and of the district court, requiring the petitioner to deliver to the trustee the property in his hands as assignee, and the orders adjudging him to be in contempt for not complying therewith, as well as the order of the court referring the matter of commitment to the discretion of the referee, must be vacated and set aside. It is so ordered.