SINSHEIMER et al. v. SIMONSON et al.

Ex parte COMINGOR.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1901.)

No. 943.

**1.** BANKRUPTCY—JURISDICTION OF BANKRUPTCY COURT—EFFECT OF MAKING ASSIGNEE PARTY TO INVOLUNTARY PETITION.

Bankr. Act 1898 contains no specific provision authorizing any third person to be joined as a party to a petition in involuntary bankruptcy, and, conceding that a general assignee of the alleged bankrupt is a proper party, it can only be for the purpose of enabling him to contest the adjudication, the result of which might be to prejudice his rights as assignee. He cannot, by being so joined, be thus brought into the case for the purposes of all future inquiries and determinations made during the administration of the estate.

**2. SAME—SUMMARY PROCEEDINGS AGAINST ASSIGNEE.**

A court of bankruptcy has no jurisdiction to bring before it, by an order to show cause, a general assignee of a bankrupt, who has been ousted from his trust by the bankruptcy proceedings and by a summary order, and, under penalty of being adjudged guilty of contempt if he refuses, require him to pay over to the trustee money of the bankrupt's estate which he disbursed as such assignee prior to the bankruptcy proceedings, or which he retained for his compensation, subject to approval of the state court. Such a proceeding is not due process of law, and the fact that the assignee appears and contests the rule before the referee is not a waiver of his right to object to the jurisdiction.

**3. SAME—JURISDICTION BY CONSENT—WAIVER.**

The provision of Bankr. Act 1898, § 23b, conferring jurisdiction of proceedings by a trustee "by consent of the proposed defendant," refers to consent to the tribunal in which the controversy is to be carried on, and not to the mode of procedure; and, where that is unlawful, the appearance of the defendant proceeded against, and his contesting the proceedings, do not confer jurisdiction.

**4. SAME—ORDER TO SHOW CAUSE—SUFFICIENCY OF SHOWING IN RESPONSE.**

A referee in bankruptcy brought before him an assignee of a bankrupt, who was proceeding to administer his estate when ousted by the bankruptcy proceedings, by an order requiring him to show cause why he should not be ordered to pay over to the trustee certain sums which were shown by his report to have been paid out of the estate for counsel fees and retained by him as commissions. The assignee filed a sworn response showing that he had used the money retained for commissions, and had also paid out the counsel fees prior to the bankruptcy proceedings for services rendered the estate; that he had no means or property, and had been unable to borrow the money, and it was impossible for him to pay it. The referee held the response insufficient, and his ruling was affirmed by the court, which ordered the money paid by a certain date. *Held* that, conceding the court's jurisdiction, such action was error, and that the showing that it was impossible for the respondent to pay the money constituted a good answer to the order to show cause. A court cannot by contempt proceedings undertake to compel the performance of something which the respondent is wholly unable to perform, even though he became so through his own fault, where it arose through a mere misconception of his legal rights.

Petition for Revision of Proceedings of the District Court of the United States for the District of Kentucky, in Bankruptcy.

This petition for review relates to a case in bankruptcy which has been twice before this court upon appeals which concerned the adjudication of Simonson, Whiteson & Co. as bankrupts. 37 C. C. A. 337, 95 Fed. 948. and 40 C. C. A. 474, 100 Fed. 426. The adjudication was made on the 20th day of September, 1899. The ground thereof was that Simonson, Whiteson & Co. had within four months preceding the filing of the petition made a general assignment under the statutes of Kentucky for the benefit of creditors to Comingor, the present petitioner for review. Comingor, who was made a party to the petition for the adjudication, tendered an answer, which appears never to have been filed. The reason for not permitting it to be filed does not very clearly appear. Upon the order adjudging the company bankrupt being made, the matter was referred to a referee. The Louisville Trust Company was appointed receiver, and was directed by the court to apply to the Jefferson circuit court (a state court of Kentucky, which had charge of the proceeds of the assigned property already converted into money under the direction of that court) for an order to pay over to the receiver the funds so in its hands. On a day prior to the making of this order, the bankruptcy court made another order on the bankrupts and on Comingor, "and all persons to whom notice may come," enjoining them "from taking any steps, instituting or having any proceedings affecting the estate and assets of Simonson, Whiteson & Co. in any state court, and especially in action No. 19,944, pending in

Jefferson circuit court"; the case mentioned being the one in which the assignment was being administered. The trust company was allowed by the state court to become a party to the action, and leave was granted to file its petition for the purpose aforesaid. This petition recited the proceedings in the bankruptcy court up to that time, including the injunction restraining the bankrupt, Comingor, and others, and made claim to the fund. The attorney for the trust company served notice of the intended presentation of the petition upon the bankrupt and upon Comingor. The latter, conceiving himself bound by the injunction, interposed no objection. On the 30th day of June, 1900, the petition was granted, and the funds turned over. Meantime, on May 28, 1900, the court made the following order:

"In the Matter of Sinsheimer, Levenson & Co., etc., v. Simonson, Whiteson & Co., D. G. Simonson, I. Whiteson, and Leo Stern, Bankrupts.

"At Louisville, in Said District, on the 28th Day of May, A. D. 1900, before John B. Baskin, Referee in Bankruptcy.

"No notice having been given, and no adverse interest appearing, it is hereby ordered that L. Comingor file with John B. Baskin, one of the referees of this court in bankruptcy, at his office, rooms 1001–5, Columbia Building, Louisville, Kentucky, on or before June 16, 1900, at 9:30 o'clock a. m., a detailed and itemized statement showing all the receipts and disbursements made by him of money and other assets belonging to the estates of Simonson, Whiteson & Co., D. G. Simonson, I. Whiteson, and Leo Stern, together with all vouchers that he may have for any disbursements. It is further ordered that said L. Comingor be and appear before the referee aforesaid in person on June 16, 1900, at 9:30 o'clock a. m., for the purpose of making settlement of his accounts as assignee of the parties aforesaid."

Not long thereafter Comingor presented the statement of account thus ordered. It showed his receipts to be $92,865.77, and his disbursements $86,099.24, showing a balance of $6,766.53 remaining in his hands. Among the disbursements were $3,000 paid to one attorney, $200 to another, and $3,300 to himself. On June 20, 1900, the referee made an order which includes the beginning of the proceedings now more particularly under review. So much of it as relates to the particular subject reads as follows:

"In the District Court of the United States for the District of Kentucky. In Bankruptcy.

"In the Matter of Sinsheimer, Levenson & Co., etc., v. Simonson, Whiteson & Co., D. G. Simonson, I. Whiteson, and Leo Stern, Bankrupts.

*     *     *     *     *     *     *     *     *

"Said receiver is further authorized and directed to take charge of and hold until further orders of court all the assets, of whatsoever kind, and estates, of Simonson, Whiteson & Co., D. G. Simonson, I. Whiteson, and Leo Stern, and also to receive from D. Sachs the sum of $3,000, and from L. Comingor $3,398.90, and also from said Comingor the further sum of $6,766.53, and also from Zack Phelps the sum of $200. It is further ordered that said D. Sachs, L. Comingor, and Zack Phelps be and appear before John B. Baskin, one of the referees of said court in bankruptcy, at his office in the Columbia Building, Louisville, Kentucky, on June 23, 1900, at 9:30 o'clock a. m., to show cause, if any they can, why they shall not be required to pay over to said receiver the sums aforesaid."

June 23, 1900, Comingor made the following response:

"Sinsheimer, Levenson et al. v. Simonson, Whiteson et al.

"Before Hon. John B. Baskin, Referee.

"L. Comingor, for response herein to the order to pay $3,398.90, says that, as shown in his report herein, he retained the same on account of his commissions as assignee before any bankruptcy proceedings, relying upon the fact that he would be entitled to more than that sum on final settlement; that for the services rendered the estate herein he believes this honorable court will, on a full hearing, allow him at least said amount; that he is a man of no means; has used of said money from time to time, relying upon its being

his, until he has none of it left. He says that he is unable to pay said money into court, having neither money nor property of any kind. He says that he has recently made efforts to borrow or raise money, and finds it impossible to do so. He asks the court for such relief in the premises as the court deems proper.  L. Comingor.

"Subscribed and sworn to before me by L. Comingor June 23, 1900. My commission expires January 6, 1904.  Morris A. Sachs,
    "N. P. Jeff. Co., Ky."

Upon the filing of this response the referee made the following determination:

"In the Matter of Sinsheimer, Levenson & Co., etc., v. Simonson, Whiteson & Co., D. G. Simonson, I. Whiteson, and Leo Stern, Bankrupts.

"At Louisville, in Said District, on the 23d day of June, A. D. 1900, before John B. Baskin, Referee in Bankruptcy.

"No notice having been given, and no adverse interest appearing, comes L. Comingor, by M. A. Sachs and Alex. P. Humphrey, his counsel, and files herein a response to the rule to show cause why he should not be compelled to pay $3,398.90 to the Louisville Trust Company, receiver in bankruptcy in this cause; and, after hearing said counsel, it is now ordered and adjudged that said response be, and the same is, hereby held insufficient, and the rule to show cause why he should not pay said sum as aforesaid is hereby made absolute. It is further ordered that said L. Comingor shall pay to the Louisville Trust Company, receiver in bankruptcy, by 9:30 o'clock a. m. on Saturday, June 30th, the said sum of $3,398.90.  John B. Baskin,
    "Referee in Bankruptcy."

For some reason not appearing in the record, the order to show cause made on the attorneys was not pursued, but on the 28th of June, 1900, another order was made on Comingor to show cause why he should not be required to pay to the receiver the sums of money shown by his account rendered to have been paid to Sachs and Phelps,—$3,200 in all. This order, after being entitled as before, was in the following terms:

"At Louisville, in Said District, on the 28th Day of June, A. D. 1900, before John B. Baskin, Referee in Bankruptcy.

"No notice having been given, and no adverse interest appearing, it is ordered that L. Comingor be and appear before John B. Baskin, one of the referees in bankruptcy of the above court, at 9:30 o'clock a. m. on June 30, 1900, to show cause, if any he can, why he shall not be required to pay to the receiver in bankruptcy herein the sum of $3,000, recited in his report as having been paid to M. A., D. A. & J. G. Sachs, and also the further sum of $200, recited in said report as having been paid to Zack Phelps.
    "John B. Baskin,
    "Referee in Bankruptcy."

Under the same title, Comingor, on June 30, 1900, made the following response:

"L. Comingor, for response to the order herein to show cause why he shall not pay the receiver in bankruptcy herein the sum of $3,000, shown in his report as having been paid Messrs. M. A., D. A. & J. G. Sachs, and $200 to Zack Phelps, Esq., says that said sums were paid them, respectively, for services rendered him as his counsel whilst acting as assignee before any proceedings herein, as already appears in his report herein. He says further that he has no money or property or means of any kind with which to pay said money or any part thereof, and refers to his former response herein as part hereof. He respectfully submits to the court that he ought not to be compelled to pay said money herein. This respondent says, further, that long before the petition in this proceeding was filed, and before he had any knowledge, information, or intimation that it was intended to be filed, and relying upon it that he would be permitted to wind up his trust under the deed of assignment for the bankrupts shown in the record in this action of proceeding, he filed his petition and brought his action in the state court, as appears in this record, which

is still pending, and he is still subject to the jurisdiction and orders of said state court requiring him to settle his accounts there, and to be responsible there for all his acts and doings under said deed of assignment. He submits to this honorable court that this response be held sufficient, and that the 'show-cause' order herein should be annulled or suspended until he is relieved from his present embarrassing position.          L. Comingor."

The foregoing response was sworn to. It was also adjudged insufficient by the referee. The rule was made absolute, and Comingor was ordered to pay to receiver the $3,000, which he alleged he had paid the Sachs as attorneys. Thereupon Comingor prayed for a review by the judge of both the orders adjudging his responses insufficient, and ordering him to pay to the receiver the said sums of $3,398.90 and $3,000 respectively. In his report to the judge the referee stated his findings to be that Comingor was entitled to no compensation whatever, and that his retention of the sum of $3,398.90 was unwarranted, and, further, that he had no legal right to pay attorney's fees, when no allowance had been made by the state court therefor, and in contemplation of law the assignee must be deemed to have the funds in his possession. The referee concluded his report by saying, "These proceedings are now certified to the judge to deal with said Comingor for disobeying said rules to pay the two sums aforesaid." Pending the action of the court on this report, the judge referred the case back to the referee, to take testimony and report what services, and the value thereof, Comingor had rendered to the estate before the petition in bankruptcy was filed; what services, and their value, he had rendered since the filing of the petition; what services, their necessity and value, the attorneys had rendered to the assignee,—together with any modification he might choose to make of his former report and recommendation. Upon this reference the receiver (who at some date not shown by the record had been converted into a trustee) and Comingor appeared. Proofs were offered by the parties, and a stipulation entered into that a certain deposition which had been theretofore taken should be read, and that the printed records of the former appeals to this court should be considered on the reference. On December 11, 1900, the referee reported the evidence which he had taken, and his conclusions thereon that neither Comingor nor his attorneys had rendered services of value to the estate, but that their dealings with it had been injurious to the creditors, and that nothing should be allowed therefor. He stated, however, that the sum paid to the attorneys was "usual and reasonable, according to the scale of compensation allowed for such services by the state court in Louisville." In conclusion the referee stated that he made no modification of his former report. While this reference was pending, and on November 10, 1900, Comingor tendered an amended response, which he offered to file; the substance thereof being as follows:

"Leonard Comingor amends his response herein to the orders to pay $3,398.90 and $3,000, and for amendment says that, as shown by the pleadings, record, and evidence in this case taken, and the entire proceedings had herein, neither this court nor the referee in bankruptcy herein has any jurisdiction, either of this respondent or the matter involved, to make any such orders or require respondent to answer thereto, because he says the records herein show that all transactions with reference to said two (2) sums of money took place before the petition in bankruptcy was filed herein, and that neither this court nor the referee in bankruptcy can proceed against this respondent as herein attempted by order or rule to pay or by summary process."

And he prayed "that said rule be discharged and said orders to pay be set aside." This response the referee declined to entertain, and it was again tendered on the filing of the referee's report. The judge, in confirming the report of the referee, held in respect to the amended response that though, in fairness, the claim of lack of jurisdiction might be referred to November 10, 1900, the date when it was tendered to the referee, it should not be entertained by the court, for the reason that by long acquiescence in that mode of procedure the respondent should be regarded as having consented thereto. Thereupon the judge directed the entry of the following order:

"In the Matter of Sinsheimer, Levenson & Co., etc., v. Simonson, Whiteson & Co., D. G. Simonson, I. Whiteson, and Leo Stern. In Bankruptcy.

"This cause coming on to be heard on the petition of Leonard Comingor for review of the order of court entered herein by John B. Baskin, one of the referees of this court, requiring Leonard Comingor to pay over to the Louisville Trust Company, trustee in bankruptcy herein, the sums of $3,398.90 and $3,000, and the court being fully advised, delivered a written opinion which was filed herein, and on January 19, 1901, and in pursuance of said written opinion, it is considered, ordered, and decreed by the court that said petition for review filed by said Comingor June, 1900, is refused and dismissed, to which said Comingor excepts, and it is adjudged and ordered by the court that said Comingor pay to said Louisville Trust Company, trustee, the said sums of $3,398.90 and $3,000 on or before February 16, 1901, to all of which said Comingor excepts."

Comingor then filed this petition for review.

W. M. Smith, for petitioner.

Augustus E. Willson, for respondent.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

SEVERENS, Circuit Judge, having made the foregoing statement, delivered the opinion of the court.

We have made a somewhat detailed statement of the course of proceedings in the case, in order to show the relation of the petitioner thereto; for it was upon the ground of the petitioner's implied consent to the mode adopted that the district judge justified it. We have only to review the orders of the referee in holding insufficient the responses made by this petitioner to the referee's orders to show cause why he should not be required to pay over the sums of $3,398.90 and $3,000, respectively, to the trustee, and his recommendation that the respondent be dealt with for his contempt in not complying therewith, and the judge's order confirming the same.

The two principal questions presented are: First, whether the petitioner was precluded from objecting to the form of procedure; and, second, if he was, whether it was properly pursued. It is contended in behalf of the trustee that Comingor was made a party to the petition for adjudication, and that, having thus been brought in, he continued to be subject to the orders of the court without other process. But it appears that no special relief was prayed against him, and it is manifest that the only legitimate object in making him a party was to enable him to contest the adjudication, the result of which might be to prejudice his rights as assignee. The bankruptcy act contains no specific provision authorizing such joinder of a third person in the petition for adjudication. But the circuit court of appeals for the Second circuit held in Re Meyer, 98 Fed. 976, 39 C. C. A. 368, that the assignee was entitled to intervene for the protection of his interest; but, if that be so, it would not follow that he might be made a party by the petitioner. The object of the petition is not to finally litigate and determine adverse claims,—certainly not to predetermine those questions which in due course remain to be determined in the usual course of administration in case the bankruptcy is adjudged. If the assignee for the

benefit· of creditors is a proper party to the preliminary proceeding, it can· only be for the.purpose of contesting one of the facts which ,would give ·his adversary ground for hostile proceeding, namely, ·the· bankruptcy of the party proceeded against, and the consequent 'investment of the bankrupts' title in the trustee. The only issue ·presented by the petition is whether the respondent is in such plight ·or has committed such an act as subjects him to the operation of the bankrupt law, and all inquiry into other questions is pro hac vice only. Smith v. Belford, 106 Fed. 658, a case recently decided by this court. It would be an anomalous result if the creditor, by naming the assignee as a party to the petition for an adjudication, and praying a subpœna for him, could thereby bring him into the case for the purposes of all future inquiries and determinations to be made in the progress of the case. Such practice would be a clever device for defeating the right of the assignee to have his title ascertained and determined by the proper court, and in a customary mode of proceeding. We are of opinion that the act cannot be construed as making the petitioning creditor able to thus subvert the rights of an adversary, and that Comingor was not, by reason of his having been made a party to the original petition in bankruptcy, precluded from his right to object to having the question of his obligation to pay the moneys specified in the order to show cause determined in that summary way. The character of the proceedings, as shown by the record, lacked the usual characteristics of a judicial proceeding. There was no petition by the trustee or other party stating any facts or presenting any issue, and it· is not shown to have been made on the motion of any one. The inference reasonably to be drawn is that the referee, perceiving these items in Comingor's statement of account, and thinking they were probably objectionable, ex mero motu made the orders to show cause why Comingor should not be required to pay them, notwithstanding his claim to have appropriated the money in payment of his own fees, or in payment for the services of his attorneys. It is ·fair to say, as we did in Smith v. Belford, that these proceedings took place when the bankruptcy courts were—many of them—acting upon an interpretation of the law in respect to the use of summary proceedings which has since been determined by the supreme court, in the case of Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, to be wholly inadmissible. But the district judge puts his conclusion upon the ground that the petitioner had acquiesced in the course pursued, by making response to the orders asking to be relieved in the premises, and going into proof before the referee, and making stipulations concerning the proofs on the reference. If his objection, which he subsequently made and now insists upon, does not so far concern the jurisdiction of the court as to render it not susceptible of waiver, we should think there was some ground for that conclusion. It may well be doubted whether such a proceeding is due process of law in such circumstances. Comingor had been ousted of his trust, and the question was that of his obligation to pay certain moneys alleged to be in his hands, belonging to the trustee. By the remedy pursued he was

deprived of his right to a trial by jury. The determination by the referee upon the facts would not be subject to appeal or writ of error. The judgment would not be enforced by execution, but by process for contempt. The proceeding, when employed for such a purpose, is in the nature of a civil remedy for the recovery of money. Quite generally, if not universally, state statutes founded on public policy forbid imprisonment as a remedy to compel the satisfaction of debts or other obligations not founded on willful wrong, and this policy may not be countervailed by the consent of parties to a proceeding which results in defeating it. And such statutes are given effect in the courts of the United States by Rev. St. §§ 990, 991. Manufacturing Co. v. Fox (C. C.) 20 Fed. 409, per Wallace, Circuit Judge; Low v. Durfee (C. C.) 5 Fed. 256, per Lowell, Circuit Judge. And see, upon this subject, Ex parte Hooson, L. R. 8 Ch. App. 231.

The question of remedies is involved in that of jurisdiction. The remedy must have some reasonable fitness to the relief sought. Thus in an action of assumpsit the defendant could not be condemned for a trespass, nor in an action of ejectment could a judgment for money be recovered, nor could a proceeding for a mandamus be employed for the mere recovery of a debt. In an action at law one cannot obtain merely equitable relief, nor could a bill in equity be maintained on a purely legal cause of action. Nor would the appearance of the defendant and his contestation of the suit without objection to the jurisdiction authorize such judgment as in these instances is mentioned. And if, in any such case, the judgment or decree be not wholly void, it is at least subject to correction by appeal or writ of error in that suit. In the case of Marshall v. Knox, 16 Wall. 551, 21 L. Ed. 481,—a case cited in that of Bardes v. Bank,—the assignee of the bankrupt claimed as assets certain property in the hands of a sheriff taken on a writ of provisional seizure for rent due the lessor of the bankrupt. The assignee obtained from the bankruptcy court a rule upon the sheriff and the lessor to show cause why they should not deliver up the property to the assignee, alleging that it was necessary to enable the court to administer the claims of creditors. The lessor, without objecting, so far as appears, to the jurisdiction of the court, contested this rule, stating his own rights and proceedings, and claimed possession of the property through the sheriff for the purpose of selling the same to raise the amount due for rent. But the rule was made absolute without further proof. He prayed an appeal, which was not allowed. Thereupon he filed a bill in equity in the circuit court, under the second section of the bankruptcy act of 1867, to enjoin the assignee from taking possession of the property under the order of the bankruptcy court, and for a decree that they should not molest him in his proceedings to collect the rent. He was denied the relief he sought by the circuit court, and he thereupon appealed to the supreme court. Mr. Justice Bradley, in delivering the opinion of the court, after reciting the facts, stated the question to be whether the bankruptcy court had any authority to make the rule to show cause above mentioned, and, as bearing

upon that inquiry, whether such a rule could be characterized as due process of law. After discussing the provisions of the act in reference to remedies and the prejudice to defendants of summary proceedings, he said:

"We think it could not have been the intention of congress thus to deprive parties claiming property, of which they were in possession, of the usual processes of the law in defense of their rights."

And he stated the conclusion of the court in the following language:

"The court is of opinion, therefore, that the district court proceeded without jurisdiction in compelling the lessor and the sheriff, under a rule to show cause, to deliver up possession of the goods in question to the assignees. It results that the bill in this case was properly filed as an original bill," etc.

The decree of the circuit court was reversed, with directions to grant the equivalent of the relief prayed. We have stated this case thus fully because it shows that the question involved is one of jurisdiction, and that the party complaining of its exercise is not precluded from his objection by having contested a rule to show cause made by the bankruptcy court. It should be observed in this connection that the consent mentioned in section 23b means consent to the tribunal in which the controversy is to be carried on, and not to the mode of procedure, which is regulated by general principles of law unless other provision is made. Under the second section of the act of 1867 the circuit court was given a somewhat similar power of superintendence, though by different methods, over the proceedings in the bankruptcy court, to be exercised "upon bill, petition, or other proper process," to that conferred upon the circuit courts of appeals by section 24b of the act of 1898. We are therefore inclined to think that this petitioner was not precluded from his right to raise the objection to the mode of proceeding at the time he did, which was before the making of the final order, and that the court erred in refusing to entertain it. His contestation of the order and his prayer for relief were substantially the same as those of the respondent in the rule to show cause in the case of Marshall v. Knox, above cited. And we think he was no more subject to the control or jurisdiction of the court for the purposes of the proceeding than was the respondent to the rule in that case.

But, however this may be, we think, upon any view of the lawfulness of the method of procedure adopted, the referee, and the court in confirming his order, erred in holding that the responses to the orders to show cause were insufficient. The action of the referee assumes that the facts were as stated by the respondent. These were that, as to the item of $3,398.90, the respondent had retained those moneys as his commission as assignee, in reliance upon the belief that he was entitled to that amount on final settlement; that he had used the money, relying upon its being his, until he had none of it left; that he is a man of no means, having neither money nor property of any kind; that he is unable, after endeavoring to borrow or raise money, to pay the same into court. With respect to the $3,000 paid to the Sachs, his attorneys, it was paid while they were acting as counsel for him, before the bankruptcy proceedings

were commenced, for their professional services rendered to him as assignee. And with respect to the ability of the respondent to pay the money the same facts exist as with respect to his ability to pay the other sum. The referee was of the opinion that the respondent was not entitled to any compensation whatever, and that he had no legal right to pay fees to his counsel without an allowance therefor by the state court, and that therefore he "must be deemed to have the funds in his possession." The court ordered a reference for a further report in regard to the question whether the respondent was entitled to any compensation for his services as assignee, and whether the counsel were entitled to any. But no question was referred touching the fact that the respondent had retained and spent the money he claimed to be due him for his compensation, or the fact that he had paid the sum mentioned to his counsel, or the ability, of the respondent to refund the moneys. The confirmation by the court affirmed the insufficiency of these facts to excuse the respondent from paying over the money, and the court thereupon ordered him to pay it before a day named. With these adjudications behind him, there was nothing to follow but imprisonment, from which there could be no prospect of relief but by reiteration of the same facts, which would be unavailing. But it is well settled that a showing made by a respondent that he is unable to do an act required of him upon an order to show cause is a sufficient answer. It matters not, for the purpose of such a proceeding, that the inability to do the thing required may be in consequence of his own fault, arising from a mere misconception of his rights, or committed before the court took jurisdiction of the matter. The court cannot compel an impossibility. Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810, 814, per Lowell and Nelson, judges; In re Chiles, 22 Wall. 157, 168, 22 L. Ed. 819; Loveland, Bankr. § 239; Kane v. Haywood, 66 N. C. 1. Other remedies may exist for punishing the petitioner, if there is ground for it, or for establishing a civil liability, if the necessary facts exist. The result is that the orders of the referee adjudging the responses of the petitioner insufficient, and the order of the court confirming the same, must be set aside.