## In re HOWE MFG. CO.

### (District Court, W. D. Kentucky. February 3, 1912.)

1. BANKRUPTCY (§ 326*)—SET-OFF OF MUTUAL DEBTS.

In order that mutual debts may be set off as provided by section 68 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), four things must concur: The debts must be mutual; they must be in the same right; they must be debts provable in bankruptcy; and they must not have been purchased after the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 326.*]

2. BANKRUPTCY (§ 326*)—SET-OFF OF MUTUAL DEBTS—STOCK SUBSCRIPTIONS.

Under such section, a debt due for stock in a corporation cannot be set off against a debt due from it, as such debts are neither mutual nor in the same right.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 326.*]

3. BANKRUPTCY (§ 342*)—RECONSIDERATION OF CLAIM.

An allowed claim against a bankrupt corporation should not be reconsidered on the ground that the claimant owed the corporation for unpaid stock.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 342.*]

4. BANKRUPTCY (§ 288*)—ENFORCEMENT OF UNPAID STOCK SUBSCRIPTION—SUMMARY PROCEEDING.

A trustee of a bankrupt corporation cannot enforce a liability for an unpaid stock subscription in a summary proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the Howe Manufacturing Company, bankrupt. On petition for review of order of referee.   Reversed.

J. C. Dodd, for Jefferson.
Percy Booth and Helm Bruce, for trustee.

EVANS, District Judge.   In a paper styled, "Petition for Reconsideration of Claim of T. L. Jefferson," filed before the referee on October 12, 1911, the Louisville Trust Company, trustee of the bankrupt, states that Jefferson's proof of debt against the bankrupt was filed and allowed on January 16, 1907, for $175,575, that on May 11, 1908, a first and final dividend of 12.4 per cent. was declared thereon, and accordingly that Jefferson was paid on his claim $22,018.90.   The petition then asserts that this dividend should not have been paid for reasons substantially as follows:   That an order had heretofore been entered authorizing and directing it as trustee to proceed for the benefit of Hueling Davis, a creditor of the bankrupt, to collect from Jefferson unpaid stock subscriptions due to the bankrupt to the extent which Davis, or the trustee for his benefit, may be entitled to the same; that, when the bankrupt corporation was organized, Jefferson had subscribed for 1,150 shares of its stock of the par value of $100 per share; that only 450 of said shares had been issued to him; that of these only 50 shares had been paid for in full, and that the others of the 450 shares had been paid for in property which was in fact only worth 25 per cent. of the valuation at which it was taken; that the other 700 shares subscribed for by Jefferson had never been issued or paid for, and that the par value thereof was due from him to the bankrupt on account of said subscription; that the claim of Davis against the bankrupt was contested, but was finally established for $5,112.41, on which on October 7, 1911, he was paid the 12.4 per cent. dividend declared on all claims allowed against the bankrupt (which sum had been held to meet his claim if allowed); that Davis is entitled, as a creditor of the bankrupt, to his proportionate share of the unpaid stock subscriptions owed by Jefferson to an amount exceeding $100,000, and that Davis is, therefore, entitled as a creditor to that proportion of the amount owed by Jefferson which $5,112.41 bears to $253,781.88. the aggregate amount of debts allowed against the bankrupt, viz., $2,019.40.   The prayer of the petition is in this language:

"Wherefore, the Louisville Trust Company, trustee herein, prays that the said proof of debt of said T. L. Jefferson may be reconsidered, and that said T. L. Jefferson may be ordered to repay to said trustee the sum of $2,019.40 for the benefit of said Hueling Davis, together with interest thereon at the rate of 6 per cent. per annum from the 8th day of June, 1903, until paid, and for its costs herein expended and for any other relief to which it may appear to be entitled."

It will be observed that the petition is not accompanied by a copy of the order giving the alleged directions to the trustee, no statement of the date thereof is made, nor is it stated by whom it was made, whether recently by the referee or by the judge in open court, nor, except in the caption and in the prayer, is the claim allowed Jeffer-

son of $175,575 ever mentioned, unless by way of recital, nor is it in the slightest respect attacked, nor is its justness in any wise questioned. In short, no ground or reason for its reconsideration is in any way suggested, although Bankr. Act, § 57k, does in terms permit such action at any time before the case is closed. Such reconsideration, however, necessarily must not be frivolously sought, nor otherwise than upon good reason shown.

Jefferson was given notice of the petition, and at the time fixed for its hearing entered a special appearance thereto for the sole purpose of contesting the power and jurisdiction of the referee to grant any relief upon it. He filed a motion to dismiss the petition and a plea to it in which are set forth in detail his objections and grounds thereof. After a hearing, the referee, on January 11, 1912, entered an order in the following terms:

"This cause having been heard and submitted to the referee on the 'motion to dismiss' or the plea filed by T. L. Jefferson to the jurisdiction of the court to hear and determine the motion of the Louisville Trust Company, trustee, to reconsider the claim of T. L. Jefferson and to require said T. L. Jefferson to pay to the trustee a part of dividends heretofore paid him on his claim as allowed herein, and, the referee being sufficiently advised, delivers his written opinion herein, and it is thereupon ordered that said motion and plea be and the same are overruled."

He gave his one reason for doing so in an opinion filed wherein, after stating that the act gave the right to reconsider a claim at any time before the estate was closed, he says:

"This case has never been closed. This right to move for the reconsideration of a claim vests in either the creditor or the trustee under subsection 6 of general orders in bankruptcy 21 [89 Fed. x, 32 C. C. A. xxiii]. The second proposition is, in the opinion of the referee, controlled by section 68 of the bankruptcy act, which is as follows: 'In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set off against the other and the balance only shall be allowed or paid.' Who shall state the account and who shall make the order of allowance? Subsection C of section 57 provides that claims when proven may for the purpose of allowance be filed in the court wherein the proceedings are pending, or before the referee, if the case has been referred. Clearly, therefore, the Congress intended that, where any question of the liability of a creditor presenting a claim against the estate is raised, the bankruptcy court should hear and determine in the bankruptcy proceedings all questions of such liability. General order 21 vests in the referee the power to take testimony on objections to a claim presented for allowance. There can be no doubt that, had the question of Jefferson's liability on his stock subscription been pressed when his claim was presented, the referee could have withheld the order of allowance of his claim and determined his liability, as this would have involved a mutual debt or a mutual credit mentioned in section 68 above quoted, and would have paid Jefferson a dividend on the amount of his allowed claim. The referee cannot see how, if the claim can be reconsidered, Jefferson's position is any different from what it would have been had the question arisen in the outset."

[1-3] While no objection to Jefferson's claim is stated in the petition, and while no intimation is made therein of any reason for its reconsideration, and while, indeed, nothing is said in the petition about setting off mutual debts, it is plain that the provisions of section 68, in the estimation of the referee, afforded the one ground

upon which the petition could be supported, and that thereupon the obligation of Jefferson to pay what may be due on his subscription for stock should be set off against his claim which had been proved and allowed for $175,575. In his discussion of the subject Mr. Loveland, in his work on Bankruptcy (3d Ed.) pp. 369, 371, 375, 376, accurately states the rule to be that, in order that mutual debts may be set off, four things must concur: (1) The debts must be mutual; (2) they must be in the same right; (3) they must be debts provable in bankruptcy; and (4) they must not have been purchased after the filing of the petition. In reference to the condition that the debts must be in the same right, he cites the familiar case of Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731, in which it was held that a debt due for stock in a corporation cannot be set off against a debt due from it, for the reason, as there given, that the debt of the corporation is due in its individual right, while unpaid stock subscriptions are a trust fund for the benefit of all the creditors of the corporation. Collier on Bankruptcy (8th Ed.) p. 796, is to the same effect. This being true, the two debts were neither mutual nor in the same right. The rule as to set-off must work equally both ways, so that, if the trustee could set off, so could Jefferson, the result of which would be that the latter could set off his debt of $175,575 against what is due, if anything, on his stock subscription, and thus be released altogether with a large balance still due him. It is therefore entirely clear that section 68 furnishes no possible support for the trustee's petition.

This conclusion possibly may be emphasized by the provisions of section 547 of the Kentucky Statutes as construed by this court in Conway v. Owensboro Savings Bank & Trust Company (C. C.) 165 Fed. 822, and by the Circuit Court of Appeals in the same case then styled Alsop v. Conway, 188 Fed. 568, 110 C. C. A. 366. But waiving this, and there being no right to set off the claims involved, we must consider the petition itself, and endeavor to ascertain the precise ground upon which the trustee claims to be entitled to the form of summary relief it asks. The petition distinctly states that Davis is entitled as a creditor to his proportionate share, to wit, $2,019.40, of the unpaid stock subscriptions owed by Jefferson to an amount exceeding $100.000, and it prays that Jefferson may be ordered to pay to it for the benefit of Davis the $2,019.40 with interest from June 8, 1903. This would seem to make clear the proposition that the trustee desires to coerce Jefferson by judicial process to pay to it at least part of what he is alleged to owe under his contract of subscription. No other aspect can be given it, and thus we are brought to the question whether the relief thus prayed for, namely, an order directing Jefferson to pay, obedience to which can be enforced by process of contempt, is admissible in an effort to compel him to pay part of his subscription.

[4] While considering this question we may also inquire whether relief could be given the trustee in this proceeding in bankruptcy proper either summarily or by a plenary action (if we can regard the petition as such) filed therein. As we have seen, the trustee was di-

rected to proceed against Jefferson. But it did not follow that it could introduce another action into this proceeding in bankruptcy in order to do so. If in a proceeding in bankruptcy proper the trustee could intrude a separate suit against every debtor of the bankrupt no difference what the demand might be, we should have a conglomeration of issues of the most remarkable extent and character in a bankruptcy proceeding. Nothing of the sort was contemplated by Congress, nor provided for by the act. On the contrary, the trustee, if he succeeds to the rights of the bankrupt, must do as the latter would have been compelled to do, and, if he have any claim to property or any right to recover upon any indebtedness alleged to be due from another person, he must, like every other litigant, institute his own separate and independent action in a court having jurisdiction of the subject-matter, and have his claim regularly adjudicated in due course of law. Being a trustee in bankruptcy gives him no special privileges in the courts. He stands there like other people. These general propositions seem to admit of no doubt. There are cases, however, which are exceptional, and in them summary proceedings may be resorted to, for example, in cases where property is in the possession of the trustee and therefore in custodia legis. If that possession is interfered with, summary action is admissible, and where the bankrupt refuses, or some agent of his refuses, to deliver to the trustee property belonging to the estate, a similar course is open. But these exceptions do not embrace cases where there are adverse claims to the property made in good faith, nor those in which there is an outstanding indebtedness of any character. Nor do they embrace a case where a third person has the property in his possession claiming it adversely, nor a case where recovery on a contract is sought, for in respect to all such cases it cannot be said that the debtor is in "possession" of any property of the estate within the rule as to summary proceedings. Louisville Trust Co. v. Comingor, 184 U. S. 18, 25, 22 Sup. Ct. 293, 46 L. Ed. 413; Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620; First National Bank v. Title & Trust Co., 198 U. S. 289, 25 Sup. Ct. 693, 49 L. Ed. 1051; In re Peacock (C. C.) 178 Fed. 851; Loveland on Bankruptcy, 100, 101. And in Sinsheimer v. Simonson, 107 Fed. 898, 47 C. C. A. 51, the Circuit Court of Appeals of this Circuit announced conclusions which appear to be especially applicable.

It is clear that Jefferson is not subject to the summary proceeding attempted to be taken against him whereby it is sought to have it adjudged, not only that he owes for his subscription, but that he be peremptorily compelled to pay part of it to the trustee for the exclusive benefit of Davis, one of the creditors, regardless of the interest of other creditors in the trust fund. If the trustee is entitled to enforce the alleged liability, it is manifest that the proper course for it to pursue is to bring an action thereon in such way as to permit a real litigation of the question by a plenary suit inter partes.

It will be remembered that the trustee in its petition avers that an order had been entered authorizing and directing it as trustee to proceed for the benefit of Davis to collect from Jefferson his unpaid

subscription to the capital stock of the bankrupt. Undoubtedly it was competent to proceed in any lawful way against Jefferson for that purpose, but entirely improper to limit the trustee's efforts to the benefit of Davis when the record shows that there are other creditors. This fault, however, is not very material.

Jefferson, by his petition, seeks a review by the court of the order of the referee. It seems to the court to be entirely clear that the order is altogether erroneous, (1) because there are no mutual debts to be set off; (2) because the trustee's proceeding is a summary one in which the relief sought is a peremptory order to pay money; and (3) because Jefferson is entitled to have adjudicated in a plenary action the question of his liability upon the alleged subscription for stock.

The order will therefore be reversed and set aside. Upon the return of the case to the referee, he will be directed to dismiss the petition, but without prejudice to the right of the trustee to proceed in a plenary action if so advised.