### In re GEO. W. COWEN CO., Inc.

### HENDERSON et al. v. MAY (two cases).

(Circuit Court of Appeals, Ninth Circuit. May 7, 1923. Rehearing Denied June 18, 1923.)

#### No. 3843.

1. **Bankruptcy ⊜288(3)—Court without power by summary order to require person to pay over money over which he has no control.**

   Where bankrupt, before filing of the petition against it, had made an assignment for the benefit of creditors the court of bankruptcy is without power by summary order to require the assignees to pay to the trustee the amount of a bank deposit which the bank had previously applied on an indebtedness from bankrupt to it, and of which the assignees have neither possession nor control.

2. **Bankruptcy ⊜440—Summary order requiring payment of money to trustee reviewable by petition to revise.**

   A summary order requiring third persons to pay over money to a trustee is reviewable by petition to revise and not by appeal.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition for Revision and Appeal from the District Court of the United States for the Northern Division of the Northern District of California; Maurice T. Dooling, Judge.

In the matter of the Geo. W. Cowen, Company, Inc., bankrupt: A. L. May, trustee. J. M. Henderson, Jr., and. T. J. Scannell appeal from and petition to revise an order of the District Court. Appeal dismissed, and reversed on petition to revise.

A. A. De Ligne and Archibald M. Johnson, both of San Francisco, Cal., for appellants and petitioners.

Henry A. Jacobs, Henry G. W. Dinkelspiel, G. B. Blanckenburg, and Martin Dinkelspiel, all of San Francisco, Cal., for appellee and respondent.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is a petition to revise an order of the court below, affirming an order of the referee, directing the respondents to pay over to the trustee in bankruptcy the sum of $12,883.81. The material facts are as follows:

Geo. W. Cowen Company, Inc., made a general assignment for the benefit of creditors on the 15th day of September, 1920, naming the respondents as assignees. At that time the assignor was indebted to the Ft. Sutter National Bank in the sum of $15,000 on a promissory note, and carried a deposit account in the bank. The business of the assignor was continued by the assignees from the date of the assignment until the appointment of a bankruptcy receiver on November 4, 1920. The deposit account in the bank was changed from the name of the assignor to the names of the assignees, as trustees, and further deposits were made by the assignees from time to time in the conduct of the business. On the 12th day of October, 1920, an involuntary petition was filed against the assignor. This was followed by adjudication and reference on November 3d, and by the appointment of a receiver on November 4th. On the 28th day of February, 1921, the trustee petitioned the bankruptcy court for an order requiring the respondents, as assignees, to account for and pay over all moneys received by them from the date of the assignment up to the date of the appointment of the receiver. Proceedings on this petition resulted in the orders now complained of.

The amount named in the orders is the exact amount that would have stood in the names of the assignees in the deposit account in the Ft. Sutter National Bank, if no diversion had been made therefrom; but on September 30, 1920, a debit of $4,516.40 was made against the deposit account by the bank, and a like amount was credited as a payment on the $15,000 note of the bankrupt held by the bank. On various dates between October 13th and October 25th, other debits were made against the deposit account in like manner, and the amounts credited on the note of the bankrupt as before. By this means the deposit account was practically, if not entirely, depleted. All these transfers were made by direction of the respondent Henderson, who was president of the bank as well as one of the assignees.

The answer of the respondents avers that the bank asserts the right

289 F.—13

to hold the deposit account and apply it as a partial set-off against the note of the bankrupt, that the claim of the bank is made in good faith, and that the respondents are without lawful right or power to retake the money or comply with the order if made.

[1] When a debtor who has made a general assignment for the benefit of his creditors is adjudged a bankrupt, within four months thereafter the court of bankruptcy has jurisdiction in a summary proceeding to make an order requiring the assignee to submit his accounts and turn over to the trustee in bankruptcy all money and property in his hands.

"This power, however, is far-reaching and drastic, and must be exercised with cautious discretion. If the bankrupt denies that he has possession or control of the property, or if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal on the part of the bankrupt, or the one in possession, to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt for the enforcement of its order. It the absence of fraud or concealment, the bankrupt court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver up, having the same in his possession or control. If it shall appear that he is not physically able to deliver the property required by the order, then, confessedly, proceedings for contempt, by fine and imprisonment would result in nothing, certainly not in a compliance with the order. The contempt in this case could only be purged by a reiteration of the physical impossibility to comply with the order whose disobedience is being thus punished. An order made under such circumstances would be as absurd as it is inconsistent with the principles of individual liberty. But it may be said that, to have collected this money from his debtors and distributed it to his creditors, with knowledge of the filing of the petition in bankruptcy, was in contempt of the Bankruptcy Law and of the proceedings in bankruptcy, which were a caveat to all the world as to the effect of such proceedings upon the property of the bankrupt in case he should be so declared. This, however, would but be a constructive contempt, and not liable to the summary punishment by fine and imprisonment which may be inflicted for actual contempt, committed in the presence of the court or by open and defiant refusal to comply with its lawful commands, where compliance is physically possible. The bankruptcy court is clothed with power, when the circumstances appear to it to warrant such proceedings, to have the bankrupt's property seized by a marshal or special master, immediately upon the filing of the petition in bankruptcy. This power is a summary one, and can be exercised upon an ex parte suggestion, and was intended to meet the inconvenience suggested by appellant, of allowing the property of the bankrupt to remain in his possession and control and liable to be unlawfully made away with or concealed in the interval between the filing of the petition and the appointment of a trustee. A provision of this kind, however, cannot always perfectly protect the creditors in their right to have the whole estate of the bankrupt segregated and guarded for their benefit. It does so as nearly as it can, with due regard to fundamental principles and policies. It is better to fall short of an absolutely perfect administration of the theory of the bankrupt law than to arm referee or court with powers of oppression alien to the spirit of our laws and institutions. A careful examination of the authorities cited by the appellant discloses no case which would justify the making of the order asked for by the appellant." American Trust Co. v. Wallis, 126 Fed. 464, 466, 61 C. C. A. 342, 345.

The same rule has been applied to assignees for the benefit of creditors. As said by the court in Sinsheimer v. Simonson, 107 Fed. 898, 907, 47 C. C. A. 51, 59:

"The confirmation by the court affirmed the insufficiency of these facts to excuse the respondent from paying over the money, and the court thereupon ordered him to pay it before a day named. With these adjudications behind him, there was nothing to follow but imprisonment, from which there could be no prospect of relief but by reiteration of the same facts, which would be unavailing. But it is well settled that a showing made by a respondent that he is unable to do an act required of him upon an order to show cause is a sufficient answer. It matters not, for the purpose of such a proceeding, that the inability to do the thing required may be in consequence of his own fault, arising from a mere misconception of his rights, or committed before the court took jurisdiction of the matter. The court cannot compel an impossibility. * * * Other remedies may exist for punishing the petitioner, if there is ground for it, or for establishing a civil liability, if the necessary facts exist. The result is that the orders of the referee adjudging the responses of the petitioner insufficient, and the order of the court confirming the same, must be set aside."

This decision was later affirmed by the Supreme Court. Louisville Trust Co. v. Cominger, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413. We have quoted from these cases at length because they are in harmony with the decisions of the Supreme Court, and state very clearly the limitations upon the jurisdiction of bankruptcy courts in summary proceedings.

Let us apply the law as thus declared to the facts of this case. The referee has found that the money is still in the possession and under the control of the respondents. If this finding is supported by competent testimony, we are bound by it; but, if it is a mere unwarranted conclusion from the facts, we must disregard it. When the money on deposit was applied on the note of the bankrupt with the consent of the assignees, the application constituted a partial payment of the note as fully as if the assignees had given their check or withdrawn the money from the bank and paid it back over the counter. And as soon as the application was made the money passed into the possession and under the control of the bank, and out of the possession and beyond the control of the respondents. To hold otherwise is to hold that entries in the books of a national bank are mere formalities, and may be changed at will.

This conclusion would seem self-evident as to the respondent Scannell, who has no connection whatever with the bank, and no control over its funds. But it is equally true as to the respondent Henderson. While he is, or at least was, the president of the bank, funds in the bank are not his funds, nor are they subject to his order or control, and an order directing him to pay over money is not an order against the bank, and it is not binding upon the bank. We are not concerned, of course, with the validity of the claim asserted by the bank. We are only concerned with its existence. It is conceded that the money is now in the custody of the bank and under its control; it is likewise conceded that the respondents have no deposit account in the bank, and we find nothing in the record which justifies the conclusion that the bank holds the money as a mere agent of the respondents, or in any other capacity, or for any other purpose than that stated in the answer. In other words, we find nothing in the record to impeach the claim of the respondents that the bank claims the money by title adverse to

them, and that the money is not now in their possession or under their control.

[2] The order must therefore be reversed. The case was brought here by both appeal and petition for revision, but the latter is the proper procedure. Kirsner v. Taliaferro, 202 Fed. 51, 120 C. C. A. 305. The appeal is therefore dismissed, and the order reversed.