### In re HOLDEN.

#### (Circuit Court of Appeals, Sixth Circuit. March 4, 1913.)

#### No. 2,275.

1. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—CONTEMPT PROCEEDINGS—FINDINGS—REVIEW.

Where, in proceedings to compel a bankrupt to pay over alleged withheld assets, the referee's finding that property had been withheld did not purport to be based solely on book entries or other controlling data, but upon an account stated by him showing a net balance due of $4,000, the referee, however, expressly refraining from finding whether the bankrupt's failure to keep books of account or records of any kind from which the true status of his affairs could be determined was willful or intentional, such finding was not conclusive on the court either by way of estoppel or otherwise, but the court was entitled to make an independent examination of the facts, and determine whether the bankrupt had in his possession money or property which he willfully and intentionally withheld.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

2 BANKRUPTCY (§ 136*)—WITHHELD ASSETS—CONTEMPT PROCEEDINGS—INABILITY.

In the absence of a finding that the bankrupt is in possession or control of assets found to be withheld by him, a showing that he is unable to pay to his trustee money ordered by the referee to be paid as such withheld assets is a sufficient answer to a proceeding to punish him for contempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

3. BANKRUPTCY (§ 444*)—PROCEEDINGS—PETITION FOR REVIEW—SCOPE.

A petition for review in bankruptcy proceedings presents for review only questions of law arising out of the facts found by the trial court or admitted by the parties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 920–927; Dec. Dig. § 444.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

In Bankruptcy. Petition by William B. Holden, trustee of Jay A. Haring, bankrupt, to revise an order of the District Court (193 Fed. 168) dismissing the proceeding to punish the bankrupt for contempt in failing to pay over $4,000 alleged to have been unlawfully retained by the bankrupt from his trustee. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

B. M. Corwin and C. V. Hilding, both of Grand Rapids, Mich., for petitioner.

Dunham & Dunham, of Grand Rapids, Mich., for respondent.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This case comes here on a petition to revise in matter of law an order of the court below dismissing the petition in a contempt proceeding. April 6, 1911, basing his action upon testimony of the bankrupt, the trustee presented a petition to the referee, alleging that the bankrupt had "fraudulently appropriated to his own use, secreted, concealed and transferred property or money, or both, which your petitioner, as trustee in bankruptcy in this matter, is entitled to receive, to the amount of $6,676.21," and also certain profits on merchandise sold by the bankrupt, the amount of which petitioner was unable to state because the bankrupt had kept no proper books of account; and praying for an order directing the bankrupt to account for such sum and profits. Answer was made consisting in substance of denials, and also an averment that the trustee had taken possession of the stock, papers, and books of the bankrupt, and so had prevented him from further accounting. The assets of the bankrupt consisted of a stock of merchandise. He had been in business at Grant, Mich., from February 10, 1910, to January 26, 1911, and also at Sand Lake and Kent City, Mich., goods having been taken to these latter places from his stock at Grant. He was adjudged bankrupt on the date last mentioned. The matter of accounting was heard upon evidence offered by the trustee, but none was offered by the bankrupt, although he was present and represented by counsel. The referee stated an account, and found that respondent had failed to turn over $4,000, and ordered him to pay that sum to the trustee within 30 days. November 20, 1911, the trustee filed a petition in the court below setting out the proceedings mentioned, alleging that service of the referee's order had been made upon respondent, that he had failed to pay any part of the sum covered by the order, and praying for an order directing respondent to appear and show cause why an attachment for contempt should not issue against him for disobedience of the referee's order. On the same date an order was entered in the court below, reciting that a hearing was necessary, and directing that respondent file answer and show cause why the prayer of the petition should not be granted. The bankrupt's answer to the petition was in the form of an affidavit, distinctly denying that he had at any time secreted or concealed any of his property, or in any manner disposed of any with intent either to cheat or defraud his creditors; that at the time he was declared a bankrupt all of his property, except his wearing apparel, was delivered to the trustee; that the only reason he had disobeyed the order of the referee was his "absolute inability to obey the same"; that for several months prior to the bankruptcy "he had to leave his business almost entirely in charge of clerks, whom at that time he believed to be honest"; that his health was such that he had to get out of doors and away from business, but that he honestly

believed every dollar received by his clerks would be properly accounted for and turned over; that until the hearing before the referee he believed this had been done, stating, also, that he was unable to give any further explanation of his business than that given before the referee. No additional proofs were taken in the court below, and no steps were taken to have the referee's order reviewed. One of the questions considered below was:

"Under these circumstances, is the finding and order of the referee conclusive upon both the bankrupt and this court, and is the duty of this court in the premises merely formal and ministerial, or is it the duty of this court to make an independent investigation of the facts disclosed by the evidence and to reach an independent conclusion based upon such investigation?"

The evidence taken before the referee was certified to the court below. The learned trial judge examined the whole record with a view of reaching an independent conclusion "at least as to the ability or inability of the bankrupt to comply with the order of the referee," and he also very fully considered the law of the case ([D. C.] 193 Fed. 168). The opinion of the court is part of the record and in practical effect treated by the parties as a finding of facts; and, unless we so treat the opinion, the petitioner has nothing here for review. It is important to compare the findings of the referee with the conclusion of fact reached by the trial judge, for both are based upon the same evidence. The ultimate finding of the referee is:

"I therefore find that the respondent bankrupt has failed to account for property, or money, or both, of the value of $4,000, and that such amount belongs to this estate, and is withheld from the trustee thereof."

In the recitals of the order entered by the referee this appears:

"The said respondent has failed to account for the sum of $4,000, and that such amount belongs to this estate and is concealed and withheld from the trustee thereof."

In the course of the opinion the court reached this conclusion:

"However, if it be conceded that the burden and duty of explaining the disposition and disappearance of property or money recently in his possession rest upon the bankrupt, yet the proofs in this case fall short of establishing respondent's guilt. * * * Here no money which has not been accounted for has been directly and reliably traced to the possession of the bankrupt and the order of the referee required him to pay to the trustee the sum of $4,000 in money. There is no positive testimony that he had in his possession at the time of his failure any part of the stock of goods except those located in the store and turned over to the trustee. Indeed, the theory of the trustee is not that the bankrupt has goods in his possession, but rather that he has converted goods into cash, and has the money in his possession. The proof is wholly circumstantial, and rests upon a foundation of inference and presumption which may be very much at variance with the actual facts. At best, the case made against this bankrupt is a doubtful one. * * * In this case the evidence is sufficient to establish an indebtedness of the bankrupt to his estate in the sum of $4,000, and thus to justify the order of the referee requiring him to pay that sum to the trustee, but it is not sufficient to establish conclusively his present ability to pay that sum of money."

[1] It is to be observed that the referee did not find that $4,000 in property or money or both were in the possession or control of the

respondent; nor did he find that such sum was concealed or withheld by respondent. Indeed, he expressly found that the account as stated by him showed a net balance due of $4,000, and from that he deduced the finding before shown. He distinctly refrained from finding whether the bankrupt's failure to keep books of account or records of any kind "from which the true status of his affairs could be determined" was "willful or intentional," and this tends to negative bad faith in respondent. It appears both by the referee's findings and the court's opinion that the referee's statement of the account was in several material respects but an approximation. The findings do not purport to be based solely upon book entries or other controlling data. Surely it was quite as open to the judge, as it was to the referee, to draw inferences and deduce a conclusion from such a source as this. It was not even a case of conflicting evidence, depending upon the credibility of witnesses who were before the referee and not the court. Ohio Valley Bank Co. v. Mack, 163 Fed. 155, 158, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184 (C. C. A. 6th Cir.); In re Swift (D. C.) 118 Fed. 348, 349; 1 Loveland on Bankruptcy (4th Ed.) pp. 225, 226. The court, not the referee, was charged with the responsibility of exercising the power of commitment for contempt (Smith v. Belford, 106 Fed. 658, 661, 45 C. C. A. 526 [C. C. A. 6th Cir.]); and it will not do to say that findings like these operate (if indeed findings of the referee can ever operate) as an estoppel upon the bankruptcy court or otherwise to conclude it. Judge Severens said, when speaking of an order of a referee and the power of the trial judge in Re Leech, 171 Fed. at page 625, 96 C. C. A., at page 427:

"The judge might have taken new evidence, if it had been offered, or he might have examined the evidence reported by the referee and determine for himself what the facts were."

The present Mr. Justice Lurton said in Ohio Valley Bank Co. v. Mack, supra, 163 Fed. 158, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184:

"No arbitrary rule can be laid down for determining the weight which should be attached to a finding of fact by a bankrupt referee. His position and duties are analogous, however, to those of a special master directed to take evidence and report his conclusions, and the rule applicable to a review of a referee's finding of fact must be substantially that applicable to a master's report."

In the unreported case, Re Contempt Proceedings against Goldman, not for publication, which was cited in the argument, Judge Denison said:

"In the proceedings before the referee, the question was whether the respondents had accounted for the receipts. In this proceeding, the question is whether Goldman now has, in his possession or under his control, a certain sum of money, or perhaps whether he did have such sum of money in his control on the date of the referee's order, so that he was then able or is now able to comply with the order. Upon the facts, in many cases, these questions would be the same, but upon the facts in other cases, these questions might be distinctly different, so that I think there is no general and invariable rule of estoppel by the previous finding. Under the circumstances of this case, I do not think the absolute rule of estoppel should be adopted."

It is true that the court there discredited the story of the respondent and committed him, but it did not regard itself as bound by the referee's order, and, on the contrary, modified the order by concluding that a sum less than that contained in the finding and order of the referee was in possession of the respondent, and thereupon ordered that the opinion should be filed as a finding of facts. It is further to be observed of that case that possession of the balance not accounted for was found to be in the respondent. Two facts thus concurred to validate the order and require its execution—title to the money in the bankrupt's estate and possession of the money in the bankrupt. Mueller v. Nugent, 184 U. S. 13, 14, 22 Sup. Ct. 269, 46 L. Ed. 405. The converse of this must be true in the instant case.

[2] The court was not satisfied either that the findings of the referee or the evidence showed the respondent to be in possession or control of the $4,000; and it would be a harsh rule to attempt to control the action of that tribunal upon any theory of estoppel. If the court was right in its belief, it is manifest that an order of commitment would have been a fruitless proceeding. Besides, as Judge Severens said in Sinsheimer v. Simonson, 107 Fed. 898, 907, 47 C. C. A. 51, 60 (affirmed in Louisville Trust Co. v. Comingor, 184 U. S. 18, 23, 22 Sup. Ct. 293, 46 L. Ed. 413), concerning facts differing from those involved here though not differing in principle:

"But it is well settled that a showing made by a respondent that he is unable to do an act required of him upon an order to show cause is sufficient answer. It matters not, for the purpose of such a proceeding, that the inability to do the thing required may be in consequence of his own fault, arising from a mere misconception of his rights, or committed before the court took jurisdiction of the matter. The court cannot compel an impossibility."

It is not necessary either to cite or comment on the decisions relied on by the court below, for our review of the present case is restricted to the questions presented by the petition for revision.

[3] It is settled that in such a proceeding only questions of law can be determined; and such questions must arise out of the facts found by the court below or admitted by the parties. In re Stewart, 179 Fed. 222, 228, 102 C. C. A. 348 (C. C. A. 6th Cir.); In re Taft, 133 Fed. 511, 513, 66 C. C. A. 385 (C. C. A. 6th Cir.); In re Leech, supra, 171 Fed. 625, 626, 96 C. C. A. 424. As Mr. Justice Holmes said in Duryea Power Co. v. Sternbergh, 218 U. S. 299, 302, 31 Sup. Ct. 25, 26 (54 L. Ed. 1047): "A petition for revision opens only questions of law."

After all, the finding of the referee was practically supplanted by the finding of the bankruptcy court; and, since we are bound in this proceeding to accept the latter finding, it is plain that the order of the court below dismissing the petition of the trustee must be affirmed, with costs.