In re GRANING et al.

In re POWERS.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

No. 88.

1. BANKRUPTCY ☞136—CONCEALMENT OF ASSETS—PRESUMPTIONS AND BURDEN OF PROOF.

On a Saturday about two weeks before bankruptcy, the members of a partnership received a check for $2,000, and instead of depositing it they drew it out in bills from the bank upon which the check was drawn. On returning to their place of business about 12:30 they dismissed their bookkeeper for the day, and, as they claimed, put the money in their

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

safe. Though they were at the store nearly all the afternoon, and though the store was locked when they left, and though there was nothing to show that the store or the safe was broken open, or that anything unusual happened, they claimed the money was not there the following Monday. They told the bookkeeper on Monday to charge the $2,000 to expenses, but later directed her to change the entry and charge it to materials, and one of them testified that he did this because he thought it would look better to creditors. *Held* that, while the trustee, seeking to compel the turning over of this money to him, had the burden of proving that the money was in the bankrupt's possession by evidence which was clear and convincing, he did this, and the burden was shifted to the bankrupts to show what became of the money.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☜136.]

2. BANKRUPTCY ☜136—CONCEALMENT OF ASSETS—EVIDENCE.

The bankrupts utterly failed to give any satisfactory or reasonable explanation as to what became of the money, and the court erred in refusing to adjudge them in contempt for failing to restore it to the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☜136.]

3. BANKRUPTCY ☜136—CONCEALMENT OF ASSETS—PRESUMPTIONS AND BURDEN OF PROOF.

While the burden of proving the concealment of assets by a bankrupt is upon the trustee, he is not required to produce positive proof of an agreement to conceal, followed by proof that the property was actually abstracted, and such proof is usually established by presumptions drawn from the facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☜136.]

Petition to Revise Order of the District Court of the United States for the Western District of New York.

In the matter of Charles T. Graning and another, individually and as copartners doing business under the firm name of Graning & Wellman, bankrupts. A motion of John R. Powers, trustee, for an order adjudging the bankrupts in contempt was denied, and the trustee files a petition to revise. Reversed, and order of the referee affirmed.

Isaac Adler, of Rochester, N. Y., for trustee.

Hampton H. Halsey, of Rochester, N. Y., for bankrupts.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. This is an appeal from an order denying the trustee's motion for an order adjudging the bankrupts in contempt for not restoring to the estate $1,975 alleged to have been fraudulently taken and concealed by the bankrupts. The referee had previously decided that the money should be returned upon the ground that the proof was insufficient to show that the bankrupts were not in possession of the money when the petition was filed.

[1, 2] Briefly, these are the facts. About two weeks before the petition was filed in bankruptcy the bankrupts received a check for $2,000. This was on Saturday, January 9, 1915, about noon. Instead of depositing the money in their own bank they drew it out in bills from the Alliance Bank, upon which the check was drawn. At 12:30 they

reached their own place of business. The bookkeeper, Miss Coleman, was there when they arrived and she was told that she need not return again that afternoon. This was an unusual occurrence, such a dismissal not having taken place since the preceding summer. Wellman testified that he put all the money in the cash drawer of the safe, the amount being $1,975. The bankrupts were at the store nearly all the afternoon. This was the last seen of the money. The bankrupts concededly had this money on Saturday afternoon when it was last seen.

It is true that the trustee must prove that it was in the bankrupts' possession by evidence which is clear and convincing. This he has done. The burden is then shifted to the bankrupts to show what has become of it. This the bankrupts have utterly failed to do. What possible reason was there for getting the money in bills Saturday afternoon when they could have deposited the check in their bank? If they deposited it in their own safe, which was a most unusual thing to do on Saturday afternoon, it must have been there when they returned the Monday following. It was not there. There is not a particle of proof that the store or safe was broken open or that anything unusual had happened at the store. So far as accounting for the money they might as well have testified that they put the bills in a box in the front window of the store expecting to find it when they returned on Monday. Their story is too improbable for human credence. It does not even have the merit of ingenuity which is sometimes shown in the attempt to conceal assets. There is not a particle of credible evidence that the store or safe was robbed. When the bankrupts left on Saturday afternoon, the doors were locked and they were the last persons to leave on that day. When they came to the store on Saturday afternoon no mention of the money was given to the bookkeeper, Miss Coleman, and of course no entry was made in the books. On her return on Monday morning she inquired of the bankrupt Wellman what entry she should make of the transaction and was told to charge the $2,000 to expense but later he directed her to change the entry from "expense" to "materials," which was done. When asked why this change was made Wellman testified that he thought it would look better to creditors. There was no evidence that the store was entered between Saturday afternoon and Monday morning or that the safe had been opened. There was testimony that the safe might be unlocked by turning the knob, but, if this were so, it seems incredible that any sane man would place $1,975 in such a safe and leave it there from Saturday afternoon until Monday.

In a similar case arising in the Southern District of New York, Judge Addison Brown said:

"No account is given of what disposition was made of the $2,000, which it is said was received in bills, except that they were paid out, or deposited. There is no corresponding deposit in the bank book. In several details of his testimony the bankrupt's evidence was inconsistent and contradictory, and was in some particulars proved to be false. The referee considered it incredible that the bankrupt was as ignorant of his business and his payments as he professed to be, and he did not consider him worthy of belief. No special losses, and no special causes of loss in business, were intimated by the bankrupt in his testimony." In re Schlesinger (D. C.) 97 Fed. 930.

This court in the Matter of Weber Company, 200 Fed. 404, 118 C. C. A. 556, said:

"Upon the application to punish for contempt he made no explanation as to how or why it was that this particular sum had disappeared, merely denying that he ever had it. His statement that he had no money when the proceeding for contempt was instituted, without some such explanation, was insufficient, and the judge quite properly held him in contempt for not paying it over. To excuse disobedience of the order by such general denial would make it easy to evade the requirements of the Bankruptcy Act [Act July 1, 1898, c. 541, 30 Stat. 544]."

[3] If such excuses as are here interposed are permitted, it will put a premium upon fraud and make deception easy. These bankrupts on Saturday afternoon had in their possession $2,000. The drawing of this money in bills from a bank other than their own was an unusual proceeding. In the ordinary course the $2,000 check would have been deposited in their own bank. No satisfactory explanation is given of the necessity of having so large an amount of specie at such a time. No plausible reason is given for carrying such a large sum of money over Sunday in a safe which could easily be opened. Is it credible that men possessed of ordinary intelligence would do an act so inexcusably careless? It is true that the burden of proving the concealment of assets is upon the trustee; he is not required to produce positive proof of an agreement to conceal followed by proof that the property was actually abstracted by the bankrupt. Such proof is usually established by presumptions drawn from facts. In the case at bar we have on Saturday afternoon $2,000 in the possession of the bankrupts. On Monday morning the money has disappeared. No one else is shown to have had access to the money, no robbery is shown, no fire has taken place and nothing but the most improbable suggestions are offered as an explanation for the disappearance of the money. To sustain such excuses puts a premium on fraud. The bankrupts here are shown to have been in possession of the $2,000 and they have not shown any plausible excuse for not producing it.

The order of the District Court is reversed and the order of the referee is affirmed.