### In re NEVIN.

### In re GRABOWSKI.

(Circuit Court of Appeals, Sixth Circuit. February 7, 1922.)

#### No. 3566.

1. **Bankruptcy ⟨⟩136(2)—Petition held to allege sufficient effort to purge of contempt for failing to turn over property.**

A petition by a bankrupt, who had been committed for contempt for disobedience to an order that he turn over property to his trustee, which alleged that the bankrupt did not, at the time the order was entered, have the money under his control, and had not paid it over to any one for him, that he was without funds and unable to comply with the order to turn the money over to the trustee, and that his brother had advanced the money necessary to pay the bankrupt's attorney and had supported the bankrupt's family during the months the bankrupt had been in jail under the order, *held* to contain a sufficient showing of effort to purge the bankrupt of his contempt.

2. **Bankruptcy ⟨⟩136(2)—Previous finding of indebtedness not conclusive as to present ability to pay.**

A previous finding that the bankrupt was indebted to the trustee, on which an order for his commitment for failure to turn the money over to his trustee was based, is not conclusive at a hearing on an application for release several months thereafter as to his present ability to pay.

3. **Bankruptcy ⟨⟩136(2)—Imprisonment should not be continued after it appears obedience cannot be enforced thereby.**

The commitment of a bankrupt for contempt, under Bankruptcy Act, § 2(13), being Comp. St. § 9586, to enforce obedience to an order to pay funds to the trustee, should cease whenever it appears that obedience to the order cannot be secured by that means, so that further imprisonment is useless, since the bankrupt should not be subjected to an indefinite imprisonment without the sanction and support of the verdict of a jury.

4. **Bankruptcy ⟨⟩136(2)—Discharge from commitment for refusal to turn over property rests in court's discretion.**

The determination whether the further imprisonment of the bankrupt to enforce obedience to an order that he turn property over to his

---

trustee, when the bankrupt claims an inability to comply with the order would be ineffective,.involves judicial discretion.

5. **Bankruptcy ⊜⟶136(2)—Release of bankrupt from commitment for refusal to turn over property sustained.**

An order releasing a bankrupt from further imprisonment under a commitment for contempt for failure to pay over money to his trustee, entered after two references in .which the referees failed to find that the bankrupt had the ability to comply with the order, and where the bankrupt had been confined five months, and protested his inability to make the payment required, and the trustee had not located any property under the bankrupt's control, will not be reversed on petition to revise.

6. **Bankruptcy ⊜⟶136(2)—Release from commitment for failure to turn over property does not bar other remedies.**

The release of a bankrupt from commitment to enforce an order requiring him to turn over property to his trustee does not preclude resistance to an application for a discharge in bankruptcy, nor proceedings to recover property thought to have been fraudulently conveyed or concealed, nor criminal prosecution for such disposition.

7. **Bankruptcy ⊜⟶446—Facts cannot be reviewed on petition to revise release from commitment.**

On petition to revise an order releasing a bankrupt from commitment for refusal to turn over property to his trustee, the appellate court cannot review the facts.

Petition to Revise an Order of the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of the estate of Walter Grabowski, voluntary bankrupt. On petition by Thomas D. Nevin, trustee in bankruptcy, to revise an order of the District Court releasing the bankrupt from imprisonment under a commitment for contempt. Affirmed.

B. J. Lincoln and Guy A. Birge, both of Detroit, Mich. (Clark, Emmons, Bryant, Klein & Brown, of Detroit, Mich., on the brief), for petitioner.

H. A. Behrendt, of Detroit, Mich., for respondent.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit' Judge. Petition to revise an order releasing the bankrupt from imprisonment under an order of commitment for contempt. On April 14, 1917, respondent was adjudicated bankrupt on his own petition. Later the referee in bankruptcy, on the trustee's petition, and after hearing respondent, ordered the latter to account for and pay over to the trustee $16,404.87, "belonging to his said estate in bankruptcy and found to be in his possession, or under his control." The District Court affirmed the report of the referee, and found bankrupt guilty of contempt of court in disobeying the referee's order, and ordered the bankrupt committed for contempt until he should obey the "turn-over" order or "until the further order of this court." On October 23, 1920, the bankrupt was committed to jail. On December 20th following he presented his petition for release from imprisonment, which was referred to the referee.

Before report was made, and on February 23, 1921, an amended petition was filed. It stated petitioner's confinement in jail since October

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

23d; that when his schedules were filed in the bankruptcy proceeding he promptly turned over his assets to the trustee, and thereafter had not had in his possession or under his control, directly or indirectly, "any portion, large or small, of the proceeds of the business formerly conducted by" him; that he had not, with intent to defraud his creditors, "turned over to any * * * person, partnership or corporation, any portion of his estate, large or small, nor did this petitioner transfer to any other person, partnership or corporation * * * any portion of his estate in any manner whatsoever, with the exception of those transactions described in the testimony herein"; that it was physically impossible for him to pay the money demanded; that he was forced to get from his brother the money paid to his attorney; that his wife and family were existing only on the charity of his brother, who was supplying them with meat and groceries; that he has never had in his possession the money in question; that it was impossible to attempt to comply with the order because of his insolvency; and that longer imprisonment would amount "to punishment for crime without a trial by jury."

There was annexed to the petition an affidavit of bankrupt's brother, stating, in substance, that for some months previous to his commitment the bankrupt had been working in the brother's butchershop at a salary of $25 per week; that because of the bankrupt's penniless condition the brother had, during the former's imprisonment, been supplying his family with meats and groceries, and frequently with a little money to provide "some of the necessities of life"; that bankrupt did not in any way turn over to his brother "any sum of money, property, stock, bonds," or any other assets; and on information and belief that the bankrupt did not turn over his assets to any one else, and that "deponent knows that at the time of going into bankruptcy, and for a considerable period of time prior thereto," the bankrupt's "business was in an insolvent condition by reason of credit arrangements with the customers." [1]

The referee recommended the denial of the petitions for release, for the reason that "no showing was made of any change in the status of the bankrupt's financial condition since the entering of said order

---

[1] Previous to bankruptcy respondent had been operating five meat markets at as many locations in Detroit. His asserted concealment of assets was largely based upon the proposition that during the last 45 days before bankruptcy he had bought merchandise in a specified amount and had sold the same; that he had made a given ratio of gross profit on such cost prices, but had subsequently accounted to the trustee for but little more than one-half of such gross sales so estimated. The bankrupt's answer to the application for the "turn-over" order denied that his gross profit was even approximately as large as claimed by the trustee; that, following the custom among Polish butchers, he was in the habit of giving credit to many of his customers; that during March and April (just before the Easter holidays) his Polish customers made heavy purchases of meat, necessitating correspondingly large purchases by bankrupt, and that many thousands of dollars of such retail purchases were still unpaid for, and were largely evidenced only by memoranda on slips or books retained by the customer. There was also denial of failure to make full accounting as far as was possible.

of commitment," and stating that "no testimony was introduced bearing on bankrupt's ability to comply with the order of the court other than bankrupt's sworn denial of his ability or inability to at this time comply with the order of the court." The testimony taken was returned to the District Court.

The judge, not being satisfied with this report, re-referred the petition to two referees, with directions "to take proofs, if required, and to report" the same, "together with the findings and recommendations of said referees thereon," and especially to answer the question whether bankrupt "has the present ability to comply with the order for contempt." The referees reported further consideration of the petition and of the testimony theretofore taken, a thorough and careful examination of the bankrupt, and of the hearing of additional arguments of counsel; that they were at a loss to make any other and further return than the one theretofore made, viz. "that the possession of a large amount of assets has by testimony which we have regarded and do regard as conclusive been established in the bankrupt as of the time of the bankruptcy, which assets he has thus far failed to turn over to the trustee or to account for"; that the only conclusion which they could reach is "that the bankrupt either has the said assets or knows where they are or what became of them, and that he is therefore properly in custody until he satisfies the court that they are not in his possession by divulging where they are or at least what he did with them"; that "the bankrupt under the severest questioning maintains that he 'has not any assets of the estate in his possession but that he turned everything he had over to the trustee,'" and his claim of the support of his family by his brother and of the latter's advancement of money to pay the attorney's fees in obtaining the desired release, and that he was practically destitute of money; that the bankrupt's position was the same as at the time of his commitment and at the previous hearing for release; "I have not the property, I cannot turn it over; I cannot comply with the orders;" that this contention rests on the bankrupt's unsupported word, and that it seemed to the referees that he "should furnish additional testimony or make some attempt to procure additional evidence to substantiate his claim and purge himself of the contempt." They stated that they did not believe that the bankrupt was telling the truth. They recognized the possibility that the bankrupt "has not at this time the property, the possession of which has, as stated, been established in him as of the time of the bankruptcy"—adding:

"He must know where it is or what became of it. His only answer is 'it was lost in the business.'"

They further stated that they realized that "he has been kept in confinement for an unusual length of time on civil process and that it should not continue indefinitely," adding that—

"The question is, we think: Has it continued long enough to warrant a belief that his alleged inability is real, in the face of the evidence in the bankruptcy proceedings and his own lack of frankness in the matter? We do not think it has been as yet of such duration."

Their reply to the court's question was:

"So far as any evidence brought before us is concerned, we believe and find that the bankrupt is as able now to comply with the order as when it was entered, and recommend that the petition be dismissed without prejudice."

The court entered this order:

"I find that from the testimony in this case the bankrupt is at this time unable to comply with the order of this court, and I hereby order that he be forthwith released from custody."

The reasons for this conclusion, as appearing in the colloquies between court and counsel on the hearing upon the referees' report, are: That while the referees think that the bankrupt "is a crook, and ought to be in jail, and kept there," they cannot on their official oaths "find that he is able to do it"; that while the court thinks the bankrupt "is crooked," it ought not to be found that he is able to pay when the referees state that they cannot "make a clear-cut answer" to the question submitted; that the referees have told the judge personally, "We cannot make that sort of a finding;" that "we are satisfied that he has property concealed somewhere, and we think he could do it, but we cannot find it from this record"; that the referees were merely "giving reasons why they think something ought to be done with him," and that the court "should not put [keep] the bankrupt in jail," unless a finding could be made that he is "able to do the thing he was ordered to do, but just contemptuously does not do it."

[1] The trustee contends, in effect, that the previous order which resulted in the commitment must be taken as a conclusive finding of the bankrupt's ability to make payment in the absence of affirmative testimony to the contrary; that the burden was thus upon the bankrupt to show affirmatively a present inability to comply; that such burden is not met by a simple reiteration by the bankrupt of such inability; that the referees regarded as conclusive the previous testimony of the bankrupt's ability to comply, and did not believe his statement to the contrary; and that the court erred in putting upon the trustee the burden of showing such present ability. The petition is criticized as insufficient because not containing "sufficient showing of effort to purge the bankrupt of his contempt." We think this criticism not good. If the court believed it, manifestly release should be ordered.

Upon the question of burden of proof with respect to present ability, the authorities are not in harmony, some holding that the finding of failure by the bankrupt to account fully creates a presumption that he still has ability to pay. It logically follows from such rule that a mere denial of present ability by the bankrupt's oath is not necessarily sufficient to purge of the alleged contempt. Such is the rule in the Second Circuit (In re Stavrahn, 174 Fed. 330, 332, 98 C. C. A. 202, 20 Ann. Cas. 888; In re Weber Co., 200 Fed. 404, 406, 118 C. C. A. 556; In re Graning, 229 Fed. 370, 372, 143 C. C. A. 490, Ann. Cas. 1917B, 1094; In re Chavkin, 249 Fed. 342, 344, 161 C. C. A. 350); and in the Ninth Circuit (Power v. Fuhrman, 220 Fed. 787, 791, 136 C. C. A. 393). Other authorities hold that the burden of showing present ability is upon the trustee, and that the evidence must affirmatively

demonstrate a present ability and wilful refusal to obey. Such is the rule in the First Circuit (In re Cole, 163 Fed. 180, 189, 90 C. C. A. 50, 23 L. R. A. [N. S.] 255); and apparently in the Eighth (Henkin v. Fousek, 246 Fed. 285, 159 C. C. A. 15). In the case of In re Haring (D. C.) 193 Fed. 168, 174, Judge Sessions discussed this conflict, and reached the conclusion that the burden was on the trustee. He accordingly denied an order for commitment. This court affirmed the order on the merits, but without mention of burden of proof. In re Holden, 203 Fed. 229, 232, 121 C. C. A. 435.

[2, 3] In our view, it is not necessary to determine which of these conflicting rules is the correct one, nor whether the court should have amended his order of release by reciting a proposed substituted finding that "the trustee has not affirmatively shown at this time the ability of the bankrupt to comply with the order for which he was committed." Manifestly, the previous findings of indebtedness to the estate and of present ability to pay are not conclusive as against an application for release. The order of commitment is presumably made under section 2 (13) of the Bankruptcy Act (Comp. St. § 9586), which empowers the court of bankruptcy to "enforce obedience by bankrupts, officers and other persons, of all lawful orders, by fine or imprisonment or fine and imprisonment." The object of such an order is merely to coerce compliance with the "turn-over" order. In re Marks (D. C.) 176 Fed. 1018, 1019. That it was specifically so intended further appears by the terms of the order in question, directing imprisonment until the turn-over order is obeyed, "or until the further order of this court." It logically follows that imprisonment should cease whenever it appears useless to continue it longer; that is to say, that the bankrupt "should not be subjected to an indefinite term of imprisonment based upon a finding of a seriously controverted fact reached without the sanction and support of the verdict of a jury." [2]

[4] In our opinion the decisive question is whether we can say that the District Court had no right to conclude, as it seems in effect to have done, that the imprisonment had been long enough to satisfy him that further confinement would fail to coerce payment. The determination of that question involved a measure of judicial discretion. The referee's statement of the account was to some extent only an approximation. Compare In re Holden, 203 Fed. at page 232, 121 C. C. A. 435. A conclusion that the bankrupt still has the money, or its control, must rest largely on presumption from former possession and on the previous findings, which did not amount to a permanent adjudication.[3] The referees were unable to answer categorically the court's

---

[2] In re Taylor (D. C.) 114 Fed. 607; 2 Loveland on Bankruptcy (4th Ed.) p. 1253; In re Marks (D. C.) 176 Fed. 1018, 1019, 127 C. C. A. 54; In re Epstein (D. C.) 206 Fed. 568; Epstein v. Steinfeld, 210 Fed. at page 239; Collier on Bankruptcy (12th Ed.) p. 695, note 74; In re Heyman (D. C.) 225 Fed. 1000, 1002.

[3] As generally illustrative of the control of a bankruptcy court over its own orders, or even upon its own motion, see the decisions of this court in International, etc., Corp. v. Cary, 240 Fed. 101, 105, 153 C. C. A. 137; In re Veler, 249 Fed. 633, 644, 161 C. C. A. 543; In re De Ran, 260 Fed. 732, 739, 740, 171 C. C. A. 470.

question respecting present ability. The court felt forced to conclude that to continue the imprisonment would be against conscience.

[5] We think the order of release should not be disturbed. When the petition therefor was filed the bankrupt had already been imprisoned nearly two months. When he was released he had been confined five months. Nearly four years had elapsed since the bankruptcy, and the trustee seems not to have definitely located any property. The only question in the minds of the referees was whether the imprisonment had been long enough to make the demonstration referred to. They thought it had not been. The District Judge thought it had. The latter was charged with the ultimate responsibility. The question is not which of these views we should prefer were we charged with the exercise of the duty imposed on the district judge. The validity of the release cannot be made to turn on the fact that the confinement had been but for four months rather than say six months.

[6, 7] That both the referee and the judge thought the bankrupt crooked is not controlling. Compare In re Haring, supra, 193 Fed. at page 173. If, as the bankrupt had insisted throughout, he did not have and had not had the money, it might well be that he could do no more than protest his innocence, with such corroboration as might be found in his brother's affidavit. Trust Co. v. Wallis, 126 Fed. 464, 466, 61 C. C. A. 342. Manifestly, failure to pay and continued insistence on inability to do so, notwithstanding the imprisonment to compel it, is some evidence of inability. It scarcely need be said that release from imprisonment cannot preclude resistance to application for discharge in bankruptcy, nor proceedings to recover property thought to have been fraudulently conveyed or concealed, nor liability to criminal prosecution for such disposition, provided, as to the latter, the statutory limitation has not already run. We cannot consider the asserted evidence of dispositions of property not satisfactorily explained. The testimony is not here, and, moreover, we cannot review the facts. In re Holden, supra, 203 Fed. at page 233, 121 C. C. A. 435.

For the reasons stated, the order of the District Court releasing the bankrupt is affirmed.