### In re J. H. JACKSON CO., Inc.

(Circuit Court of Appeals, Second Circuit. November 19, 1926.)

No. 212.

1. Bankruptcy ⏎238—"Due hearing," required in proceeding for turn-over order implies statement, answer, issues framed thereby, and trial.

"Due hearing," required on proceeding to have turn-over of bankrupt's books and papers ordered, implies statement, answer, issues framed thereby, and trial thereon, with right thereat for each party to examine the other and introduce witnesses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Hearing.]

2. Bankruptcy ⏎238—Circumstantial evidence is sufficient for order for turn-over of bankrupt's books and papers.

To justify order for turn-over of bankrupt's books and papers, circumstantial evidence is sufficient.

3. Bankruptcy ⏎238—Bankrupt's possession of books and papers for turn-over order may be deduced from his original possession and his testimony of loss.

Proof of possession for turn-over order of bankrupt's books and papers may be deduced from original possession and testimony concerning their loss or disappearance.

4. Bankruptcy ⏎238—Defense of loss of books by leaving in taxicab held properly stricken as sham, and turn-over order properly entered.

Defense, in answering affidavit of bankrupt in proceeding to have him turn over books and papers, that he lost them by leaving them in taxicab, while taking them home from place of business, *held* properly stricken as sham, and turn-over order then made on statement in petition was after due hearing.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the J. H. Jackson Company, Inc., bankrupt. From order that John H. Jackson turn over books and papers of bankrupt, he appeals. Affirmed.

See, also, 15 F.(2d) 603.

Appeal under section 24b of the Bankruptcy Act, as amended by statute approved May 27, 1926 (44 Stat. 664).

The bankrupt is a corporation, but the business was that of the appellant, John H. Jackson, who personally conducted it and owned (except, perhaps, for qualifying shares) all the capital stock.

The place of business was at 116 Nassau street, Manhattan, quite near the Brooklyn Bridge, and in one of the most crowded and busy portions of the city. Jackson lived at 899 Bushwick avenue, Brooklyn, and the ordinary route between his place of business and his home is through a populous and frequented urban region.

According to the affidavit of Jackson himself, on August 3, 1926, he was much pressed by creditors, knew that he had been losing considerable amounts of money, and decided to take his books of account home with him, look them over, and get "in my own way a better picture of my financial condition than I then had."

Though Jackson had been in business since 1918, though his credit rating was between $50,000 and $75,000, and a financial statement of the corporate condition made on December 31, 1925, showed a net surplus of upwards of $90,000, and although, when petition was filed on August 5, 1926, the corporate indebtedness, according to Jackson, was probably over $400,000, the corporation had no bookkeeper. Jackson kept the books, making therein the original entries with the assistance of an accountant, who visited the place of business once a month.

The reason for Jackson's taking the books home with him he states as above, and further adds that the accountant "would not come in ordinarily until the middle of the following month to complete the books for the preceding month," and he did not desire to wait for him.

Therefore he says that about 7 o'clock on the evening of August 3d he left his office and walked down three flights of stairs, carrying with him what he describes as a "bulky" bundle, containing the corporate general and customers' ledgers, cash book, journal, purchase book, sales book, trial balance, bank and check

books, returned check vouchers, and some correspondence. He also carried another bundle of various unspecified articles of haberdashery, purchased that day at a cost of something over $20.

Having reached Nassau street, he walked, carrying his bundles, a short·distance north and hailed a passing taxicab, giving orders to deposit him at his Brooklyn home. In his affidavit he continues his story that "during the ride nothing unusual transpired, except that I was reviewing in my mind many of the recent business events and endeavoring to come to some solution of them. When the taxicab stopped in front of my house I alighted. I paid the chauffeur and went into the house, and it was not until almost ten minutes later that I realized the terrible mistake I had made. I had left my packages, one of which contained the books, in the taxicab." With the departure of the cab all trace of those books and haberdashery had disappeared, despite many advertisements in the city papers.

Immediately on the filing of the petition in bankruptcy, receivers were appointed and an examination had of Jackson under section 21a (Comp. St. § 9605), and the foregoing is in substance the story to which he has adhered throughout.

On the 11th of August the receivers, upon due affidavit and notice of motion, moved for an order that Jackson deliver to them the books and papers substantially above described. Jackson replied with the affidavit from which the above quotations have been made. On the return day of the motion, and after hearing argument, an order was entered, dated September 18, declaring that said books and papers were found and declared to be in the possession of Jackson, and requiring him within five days to deliver them to the receivers of the bankrupt. From this order the present appeal was taken, appellant assigning for error the summary action of the court, its refusal to refer the application for the order to a referee for hearing, and in granting the order when "there was no evidence before the court to support the finding" that the books and papers were "in the possession and under the control" of appellant.

McManus, Ernst & Ernst, of New York City (Irving L. Ernst, Walter E. Ernst, and Hugo I. Epstein, all of New York City, of counsel), for appellant.

Robert P. Levis, of New York City, for receivers in bankruptcy.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] This appeal rests on the assertion that the proceedings below are inconsistent with In re Sugarman (C. C. A.) 3 F.(2d) 436. We have held that matters of this kind, although summary, require "due hearing"—a phrase implying "a statement by the party plaintiff and an answer by the party defendant," and "an issue framed by what are practically pleadings; on those pleadings the trial is based, and at such trial each party is entitled to examine the other as well as to introduce witnesses." We adhere to that statement.

The proceedings below began in a form perfectly regular. There was a written petition preferred, alleging that Jackson had the books and papers. There was reasonable notice given; the matter was brought on`by order to show cause, and Jackson made written answer. This was properly formal. See Remington (3d Ed.) §§ 2405–2408.

[2, 3] It is to be observed that the proceeding was not one to punish Jackson for contempt, but to obtain an order requiring him within a reasonable period to deliver what he had to the receiver. To justify such an order, circumstantial evidence is sufficient (In re Graning, 229 F. 370, 143 C. C. A. 490) and the proof of possession of (e. g.) books may be deducible from the bankrupt's original possession and his own testimony concerning their loss or disappearance. (United States v. Moore [C. C. A.] 294 F. 852, at page 857). So the question narrows to this: Can there be a "due hearing" without an opportunity of introducing witnesses?

[4] If there had been no answer on the part of Jackson, there would have been a statement that he had the books, etc., and nothing to controvert that, so the order would have passed. But by the filing of the answering affidavit there was in substance a pleading offered, setting forth new matter; that is, new in the form of a pleading. But this new matter is obviously false, in the sense of being wholly unworthy of belief. It formally introduced a defense, but the defense was sham; i. e., one which is palpably false. Witherell v. Wiberg, 4 Sawy. 232, Fed. Cas. No. 17,-917. Now a sham answer or a sham defense may be stricken out, and the case is then left as if no defense had been offered. The practice is too familiar in New York to need citations.

It may be noted, not as strictly relevant to the question of law presented, but as showing the nature of the hearing, that counsel for appellant, when before the court below,

admittedly declared that Jackson had nothing to add, and "stood on his affidavit." We think the action of the District Court an instance of striking out a sham defense, and that a proper order was entered after due hearing. The question of contempt is not now before us.

The order to show cause, granted in this court, is discharged, and the order appealed from affirmed, with costs.