## In re MORRIS et al.

### CHATZ v. MORRIS et al.

### No. 8813.

Circuit Court of Appeals, Seventh Circuit.
Dec. 12, 1945.

Robert McCormick Adams, George N. Kotin, and Wm. E. Gainer, all of Chicago, Ill., for appellant.

Edwin A. Halligan and Samuel M. Lanoff, both of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Three orders of the lower court are involved in this appeal: (1) An order of May 19, 1941, requiring bankrupts to turn over to the trustee in bankruptcy the sum of $178,456.56; (2) an order of December 19, 1941, committing bankrupts to jail for

contempt growing out of their failure to comply with order No. 1; (3) an order of February 13, 1945, vacating and setting aside orders Nos. 1 and 2. The last is the order appealed from.

On August 24, 1939, Louis Morris and K. G. Morris (Kitty G. Morris), his wife, doing business as Morris & Co., were, pursuant to an involuntary petition, adjudicated bankrupts. They had for many years been engaged in the real estate business and for a period from January 1, 1938, to the date of bankruptcy had received from prospective purchasers of real estate sums of money in excess of $200,000 and deposited same in their various bank accounts. For the most part the prospective purchasers never received any conveyance of the real estate sought to be purchased and never received any return of their deposits. The details of the scheme of operation are here unimportant, but it may be said that the bankrupts, with their son, were convicted in the State Court of Cook County of embezzlement and each of the bankrupts received a sentence of five years to a state institution. Service of sentences began on December 20, 1939.

On September 17, 1940, the trustee in bankruptcy filed his petition alleging that bankrupts withheld large sums of money rightfully belonging to the estate and praying that an order be entered directing them to turn over said sums to the trustee. Notice of this petition was duly served upon bankrupts, then confined in state institutions, and while counsel at one time appeared for them in connection therewith, he later withdrew and at the time of the hearing upon the petition no one appeared for them and no steps were taken either by the trustee or the bankrupts to have them personally present. After hearing the evidence, the Referee in bankruptcy on May 19, 1941, found that bankrupts (and their son) were then in possession of the sum of $178,456.56 rightfully belonging to the bankrupt estate and ordered bankrupts to turn same over to the trustee. Due notice was given bankrupts of the entry of this order, and upon failure to comply therewith, a rule was entered on October 14, 1941, directing bankrupts to show cause by October 29, 1941, why they should not be held in contempt. Notice was given each bankrupt of the entry of this rule, but neither made response thereto, whereupon the matter was certified by the Referee to the District Court. On December 19, 1941,

the District Court adjudged bankrupts guilty of contempt and ordered them committed to jail upon their release from state imprisonment, there to remain until they complied with the turn-over order, or until the further order of the Court. Upon completion of their penitentiary sentences and at different times, in late 1943 or early 1944 the two bankrupts were released by the State of Illinois and were then taken into custody by the United States Marshal under the commitment order of December 19, 1941, of the District Court and lodged in jail where they remained until released by the District Court order of February 13, 1945.

The order of February 13, 1945, was the result of a joint petition filed by bankrupts in the District Court on April 19, 1944, wherein they attacked both the turn-over order of May 19, 1941, and the commitment order of December 19, 1941. They asked for a general reopening of both orders and a re-examination of the facts upon which the original turn-over order was entered and also a determination of whether they should be further held under the commitment order. They prayed that both orders be vacated and set aside and that petitioners (bankrupts) be discharged from further custody. Issue was joined on this petition and the same was referred to the Referee. The Referee, over objection of the Trustee, entered upon a general rehearing of the entire matter, including the original turn-over order. He stated at the beginning of the hearing: "I think I should permit the petitioners to introduce evidence in support of a motion to reconsider the original turn-over order, not in any recognition that it was improper * * * but as a court of equity, I think I would be justified in hearing evidence which even now might be so persuasive as to show me that the order should not have been entered in the first place * * *." He then entered upon extensive hearings wherein bankrupts and trustee produced numerous witnesses and at the conclusion of which the referee reported his findings to the District Court in great detail. He said in Finding 12: "I find that the evidence shows by clear and convincing testimony that the petitioners at the time of the entry of the turn-over order were in possession of the sum of $108,624.94 of funds belonging to this estate." A careful examination of the record made before the Referee indicates that he gave bankrupts the benefit of every reasonable

doubt growing out of the receipt by them of the various funds in question and, after doing so, he concluded as a matter of law "that the evidence fails to show any legal or equitable reason for the vacation of the turn-over order except as to the excess over $108,624.94."

Both the trustee and bankrupts filed exceptions to the report of the Referee and upon hearing before the District Court, the Court overruled the trustee's exceptions, sustained those of the bankrupts, and on February 13, 1945, entered its order vacating both the turn-over order of May 19, 1941, and the contempt order of December 19, 1941, dismissed the original petition of trustee instituting the turn-over proceedings, and released bankrupts from further imprisonment under the contempt order. From this order the trustee appeals.

 Appellant here contends, as he did in the lower Court, that while the Court might properly hear matters occurring subsequent to the turn-over order that bore upon bankrupts' ability to comply, it was without authority to hear matters affecting the turn-over order as that order had become final, and the present proceedings amounted to a collateral attack upon that order, contrary to the holding of the Supreme Court in Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419. The Oriel case is in many respects quite similar to the instant case although its scope is much more narrowly limited than our case. The order there under consideration, both by the lower Court and on review, was strictly limited to the contempt order, the bankrupts contending that in the contempt hearing the Court should receive evidence impugning the integrity of the turn-over findings and order. The Supreme Court held that the lower Court properly denied them this privilege on the ground that the turn-over order could not be thus collaterally attacked. There had been no appeal from the turn-over order and no rehearing of that order had been sought in the District Court. The only challenged order was the contempt order and in a consideration of that question the Court accepted as a verity the previous turn-over order and declined to retry the issues there involved. To thus hear evidence affecting the previous turn-over order would in a sense have been a collateral attack upon that order. However, the situation in our case is somewhat different. The bankrupts here, after their release from the state penitentiaries,

sought by their petition of April 19, 1944, to have the District Court not only consider the question of the contempt order, but to grant them a complete rehearing on the turn-over proceedings. Although the bankrupts had been properly and sufficiently notified of the turn-over proceedings which they permitted to go by default, the lower Court, apparently in recognition of the fact that they were under certain handicaps in that respect by reason of their confinement in penal institutions, granted them such a rehearing. This hearing was extended and resulted as we have previously indicated herein.

We think the District Court was not without authority to thus rehear the matters affecting the turn-over order. The bankruptcy proceedings remained open and were constantly before the Court for its consideration and entry of any proper orders affecting the administration of the bankrupt estate. Undoubtedly a discretion was vested in the District Court whether it should give further consideration to its previous order, and under the circumstances here present it cannot be said that there was any abuse of that discretion in granting the rehearing. This would not be a collateral but a direct attack upon the previous turn-over order. Upon the rehearing, however, the Referee found and reported facts warranting the entry of a turn-over order, although in an amount less than that originally found. The facts found by the Referee are most persuasively suggested by the evidence and we are unable from the record before us to determine the basis of the District Court's order vacating in its entirety the turn-over order and dismissing the trustee's petition. The District Court found no facts and the order in question contains no intimation that the Court believed that the Referee's finding of facts was unsupported. Indeed, the record discloses abundant support.

 Bankrupts contended below, as here, that the Court was without jurisdiction to enter the turn-over order because bankrupts were at the time of the hearing and entry of the order confined in penal institutions. A mere suggestion of the consequences that might flow from the acceptance of such a proposition is a sufficient answer. If bankrupts (as found here) were withholding substantial amounts, if not all, of the bankrupt estate and refusing to deliver the same to the trustee for the benefit of creditors, must the bankruptcy

Court mark time in its administration of the estate while bankrupts by reason of their violation of a criminal statute of the state, serve, one, five, ten or twenty years in penal institutions? Bankrupts were in the instant case duly notified of the turn-over proceedings and there was no denial of due process by reason of their confinement. Moreover, they appeared and testified at the rehearing. Consequently, it would seem that the Referee's report clearly called for only a modification as to amount of the turn-over order. The weight to be accorded the Referee's findings of fact indicated such disposition, the rule being not unlike that concerning the weight to be accorded findings of masters and the verdicts of juries. See Arrow Distilleries, Inc. (Mich.) v. Arrow Distilleries, Inc. (Ill.), 7 Cir., 117 F.2d 636, and cases there cited; In re Masor, 7 Cir., 117 F.2d 368; In re Hoffman, D.C., 49 F.Supp. 245.

 With reference to that part of the order vacating the contempt order and releasing bankrupts from further confinement for its violation, the trustee urges that the lower Court's action was without authority for the reason that bankrupts failed to show compliance and failed to show any changed conditions since the turn-over order that would excuse compliance. True, the Referee found that bankrupts had introduced "no satisfactory evidence of any event happening since the entry of the turn-over order showing their present inability to comply therewith," yet the Court knew that after several years' confinement in the penitentiaries of the State, and after many months of confinement in jail under the contempt order no results had been achieved. This in itself was some evidence, though not conclusive, of bankrupt's present inability to comply. While it could also have spelled unwillingness, yet the Court could well have reasoned that further confinement would serve no useful purpose. A broad discretion is lodged in the District Court in dealing with contemnors, and under the circumstances here present we cannot find that the Court abused its discretion in releasing bankrupts from further imprisonment. See Oriel v. Russell, supra; In re Nevin, 6 Cir., 278 F. 601; Epstein v. Steinfeld, D.C., 206 F. 568. In view of our conclusion that the Court acted within its discretion in this respect it is unnecessary to discuss or pass upon the broader jurisdictional question affecting the contempt order.

It may be thought that the integrity of the turn-over order is of no moment if the Court's order in releasing bankrupts was proper, but we think this does not necessarily follow. The order entered by the Court vacating both previous orders might well indicate that the previous turn-over order was erroneous from the beginning and that bankrupts had been free of blame at all times. This is contrary to the result reached on two occasions by the trier of the facts and contrary to the overwhelming weight of the evidence. The integrity of the turn-over order may affect other proceedings in the administration of the bankrupt estate and would most certainly have a direct bearing upon any application for a discharge in bankruptcy. We think the District Court's order too broad in this respect.

The District Court's order in so far as it relates to the order of commitment and the release of the contemnors from imprisonment is affirmed. The order vacating the turn-over order of May 19, 1941, and dismissing Trustee's petition is reversed. The cause is remanded for further proceedings consistent herewith, each party to pay one-half the costs of this appeal.

Affirmed in part, reversed in part, and remanded.