In re SHAPIRO et al.
Bankr. No. 21837.

United States District Court
W. D. Pennsylvania.
Feb. 24, 1953.

Lyman C. Shreve, Erie, Pa., Paul I. Stern, New York City, for Bankrupts.

S. Knox Harper, Warren, Pa., for Warren Bank & Trust Co.

GOURLEY, Chief Judge.

The matter before the court in this bankruptcy proceeding relates to a petition for review from the referee's order denying a discharge to the bankrupts.

■ The court must pass upon the referee's findings of fact, adopt or modify them, or, if necessary, make findings of its own. Moonblatt v. Kosmin, 3 Cir., 139 F.2d 412.

■ The findings of a referee in bankruptcy on oral evidence are entitled to great weight. In re Barcia, 2 Cir., 147 F.2d 288; In re Morris, 7 Cir., 152 F.2d 178. They should be accepted by the District Court except in plain cases. Epstein v. Steinfeld, 3 Cir., 210 F. 236; In re Wolf, 3 Cir., 165 F.2d 707; In re Skrentny (Molner v. Skrentny) 7 Cir., 199 F.2d 488.

The facts appear to be as follows:

Para Equipment Company is a partnership composed of Edward Shapiro, Sophie Shapiro and Annette Greenberg. This partnership had its principal place of business in Sheffield, Warren County, Pennsylvania, where it was engaged in the manufacturing of wooden doors.

Para and the individual partners were indebted to Warren Bank and Trust Company and Reconstruction Finance Corporation, holding participation in the debt, on a note, dated June 9, 1948, for $150,000. The debt was evidenced by a judgment entered in the Court of Common Pleas of Warren County, Pennsylvania, on July 7, 1949, at No. 207 August Term, 1949. This debt was secured in part by an assignment of accounts receivable, dated July 7, 1949, by Para to Warren Bank and Trust Company. The assigned accounts receivable represented collateral in a sum in excess of $34,000 and was a material part of the security held by the Bank as collateral to the loan of Para, and represents a major part of the loss sustained by the bank and Reconstruction Finance Corporation when Para failed.

Under this agreement, Para assigned to the Bank certain accounts therein listed, together with accounts receivable that might thereafter be substituted. This assignment provided for the creation of a cash collateral account from the proceeds of the original assigned accounts receivable. Cash could be withdrawn by Para by substituting other accounts receivable for cash. By the terms of the assignment of accounts receivable, Para certified that all the accounts assigned therein, together with accounts receivable that might thereafter be substituted, would represent bona fide sales to the parties named therein according to their terms and specifications, that the amounts set forth as owing are actually owing with no set-off, defense, or counterclaim thereto and that any returned property, the original sale of which was the basis of assigned accounts receivable, will be held in trust for the bank as security for said loan.

Para and the respective individual partners thereof, were adjudicated voluntary bankrupts by action of the United States District Court for the Western District of Pennsylvania on November 4, 1949. The administration of the Bankrupts' Estates was entrusted to Wendell McMillen, of Sheffield, Pennsylvania, who was first appointed as receiver, and thereafter appointed as trustee.

The books of account of Para were not surrendered to Wendell McMillen, trustee, but were retained by Edward Shapiro, one

of the bankrupts, and were reported in the custody of Lipton and Beiser, accountants, of New York City. Upon divers occasions Mr. McMillen demanded the books from Mr. Shapiro, without obtaining them. On June 29, 1951, Edward Shapiro delivered what he alleged were the books of Para at the office of referee in bankruptcy, James E. Marsh, Esq., in Erie, Pennsylvania, on the occasion of a hearing on specifications of objections to discharge filed by the Warren Bank and Trust Company on May 11, 1951. Examination of the books surrendered by Edward Shapiro disclosed the same to be incomplete. Later, on August 23, 1951, Wendell McMillen, trustee, received from Lipton and Beiser, accountants, additional books of Para.

The specifications of objection to discharge filed by the Warren Bank and Trust Company are as follows:

1. The Bankrupts have committed an offense under Section 152 of Title 18 of the United States Code punishable by imprisonment in that, after filing of their petition or petitions in bankruptcy, they have knowingly and fraudulently withheld from the trustee, who was entitled to their possession, the books of account of the Para Equipment Company.

2. That said Bankrupt, Edward Shapiro, on divers occasions, obtained money on credit from the Warren Bank and Trust Company out of a cash collateral account held by the said Warren Bank and Trust Company in connection with a written agreement with Warren Bank and Trust Company and Para Equipment Company, providing for the assignment and collection of accounts receivable of Para Equipment Company as collateral security to a certain note of Para Equipment Company, dated June 9th, 1948, payable to the Warren Bank and Trust Company in the original amount of $150,000, by submitting to the said Warren Bank and Trust Company a written request for the substitution of an account receivable therein, and assigned to Warren Bank and Trust Company, for cash from said collateral account, when to the knowledge of said Edward Shapiro said account receivable therein described and assigned did not represent a valid and existing claim by Para Equipment Company against the debtor therein named, to-wit:

(a) On March 18, 1949, Invoice No. 7676 for 240 doors sold and shipped to Eastern Plywood & Door Company, 831 Clinston Street, Jamestown, New York, for the net amount after discount of $1951.80, on which no invoice and no merchandise were delivered to Eastern Plywood & Door Company, and on which Para Equipment Company received from Warren Bank and Trust Company cash in the sum of $1951.80 from said cash collateral accounts.

(b) On February 26, 1949, Invoice No. 7231 for 430 doors sold and shipped to Toledo Sash & Door Company, 901 Hoag Street, Toledo, Ohio, for the net amounts after discount of $3527.37, on which the order was cancelled before delivery and on which Para Equipment Company received from Warren Bank and Trust Company the re-assignment of Invoice No. 7151 evidencing indebtedness of Wells Lumber Company in the sum of $1510.67, and cash released to Para Equipment Company of $68.14.

(c) On April 7, 1949, Invoice No. 7697 for 750 doors sold and shipped to Harnishfeger Corporation, Houses Division, Port Washington, Wisconsin, for the net amount after discount of $5810.90, on which the order was cancelled before delivery and on which Para Equipment Company received from Warren Bank & Trust Company cash in the sum of $5604.17 from Cash Collateral Account.

3. The bankrupts have failed to keep or preserve books of account from which their financial condition and business transactions might be ascertained.

Section 14, sub. c. of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, provides, inter alia, as follows:

"The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under Title 18, United States Code, Section 152; or (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records,

from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; or (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; * * *"

Title 18 U.S.C. § 152, 18 U.S.C.A. § 152, provides, inter alia, as follows:

"Whoever, after the filing of a bankruptcy proceeding, knowingly and fraudulently withholds from the receiver, custodian, trustee, marshal, or other officer of the court entitled to its possession, any document affecting or relating to the property or affairs of a bankrupt.

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

After extended hearings on June 29, 1951, July 24, 1951 and September 18, 1951, before referee James E. Marsh, Esq., during which evidence and testimony were introduced in behalf of the Warren Bank and Trust Company and in behalf of the bankrupts, referee Marsh made findings of fact sustaining the allegations contained in each of the specifications.

■ It is well settled that a false statement or misrepresentation for the purpose of securing money or property on credit will justify the denial of a discharge in bankruptcy. In re Bernstein, 7 Cir., 197 F.2d 378.

■ Undoubtedly, in the present instance, when the findings of a referee must necessarily be based upon conflicting evidence involving questions of credibility, and the referee has heard the witnesses and observed their demeanor, great weight attaches to his conclusions and the weight of authority is that the District Judge, while scrutinizing with care his conclusions upon a review, should not disturb his find-

ings unless they are manifestly unsupported by the evidence. In the matter of Musgrave, D.C., 27 F.Supp. 341, 343; In re Lawrence, 2 Cir., 134 F. 843.

General order in bankruptcy No. 47, 11 U.S.C.A. following section 53, provides in part:

"Unless otherwise directed in the Order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

An examination of the record develops the irrefutable fact that referee James E. Marsh, Esq., on February 16, 1950 requested Edward Shapiro, one of the petitioning partners herein, to surrender the partnership books to the trustee, an act which is generally accepted procedure after adjudication in bankruptcy, but that such surrender, after numerous demands by the Trustee, was not made until June 29, 1951, and this was limited to part of the books, while the remainder were not made available to the trustee until August 23, 1951.

Despite bankrupts' contention that the books were retained to complete current returns for federal income tax, no justification existed to keep them in New York City after May of 1950.

Evidence was introduced to show that the books were being used for the purposes of the bankrupt to the detriment of creditors.

The record further develops the fact that after the Warren Bank and Trust Company began to make inquiries with regard to the status of the assigned accounts receivable during the latter part of June, 1949, the whole complexion of the bookkeeping changed.

■ The record discloses a sufficient basis from which the referee could have reasonably concluded that Edward Shapiro fraudulently withheld the books of account from the trustee because these books did not properly reflect the financial picture with regard to the accounts receivable which had been assigned to the Warren

Bank and Trust Company. I am satisfied that the findings of the referee in refusing discharge to Edward Shapiro are amply supported by convincing evidence.

With respect to the referee's denial of discharge to Sophie Shapiro and Annette Greenberg, Section 14, sub. e of the Bankruptcy Act provides as follows:

"If the bankrupt fails to appear at the hearing upon his application for a discharge, or having appeared refuses to submit himself to examination, or if the court finds after hearing upon notice that the bankrupt has failed without sufficient excuse to appear and submit himself to examination at the first meeting of creditors or at any meeting specially called for his examination, he shall be deemed to have waived his right to a discharge, and the court shall enter an order to that effect."

The referee found that the bankrupts Sophie Shapiro and Annette Greenberg without proper excuse, failed to appear at the hearings on application of discharge and are therefore deemed to have waived their right to a discharge.

Sophie Shapiro is the wife of Edward Shapiro and Annette Greenberg is his daughter. They did not appear at any of the hearings held with regard to discharge. At the hearing held on June 29, 1951, the referee inquired whether Sophie Shapiro and Annette Greenberg had had notice of the hearing and whether they would be present. Mr. Shapiro said that his wife was at home ill and that they had written their daughter about the hearing. At the hearing of July 24, 1951 the same excuse was offered for Mrs. Shapiro and Annette Greenberg. No excuse of any sort was made for them at the hearing held on September 18, 1951.

It is apparent that the referee exercised reasonable discretion and restraint in affording Annette Greenberg and Sophie Shapiro every opportunity to participate in the bankruptcy hearings, and his action in denying their discharge was in order.

An appropriate order is entered.